**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

_____

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS ) | |
| OF TEXAS, INC. ) | |
| 823 Congress, Suite 230 ) | |
| Austin, TX 78701, ) | |
| ) | |
| ASSOCIATED BUILDERS AND CONTRACTORS, INC. ) | |
| CENTRAL TEXAS CHAPTER ) | |
| 2600 Longhorn Blvd., Suite 105 ) | |
| Austin, TX 78758, ) | Case No. 1:15-cv-00026 |
| ) | |
| and ) | |
| ) | |
| NATIONAL FEDERATION OF INDEPENDENT ) | |
| BUSINESS/ TEXAS ) | **COMPLAINT FOR** |
| 400 W. 15TH St., #804 ) | **DECLARATORY AND** |
| Austin, TX 78701 ) | **INJUNCTIVE RELIEF** |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| NATIONAL LABOR RELATIONS BOARD, ) | |
| 1099 14th St., N.W. ) | |
| Washington, D.C. 20570 ) | |
| ) | |
| Defendant. ) | |

_____ )

1.      Plaintiffs ASSOCIATED BUILDERS AND CONTRACTORS OF TEXAS, INC. ("ABC OF TEXAS"), ASSOCIATED BUILDERS AND CONTRACTORS, INC., CENTRAL TEXAS CHAPTER ("ABC CENTRAL TEXAS") and NATIONAL FEDERATION OF INDEPENDENT BUSINESS/TEXAS ("NFIB/TEXAS") (collectively "THE PLAINTIFFS"), seek declaratory and injunctive relief against the Defendant NATIONAL LABOR RELATIONS BOARD ("DEFENDANT" OR "THE BOARD"),  for violating Federal law.

2.     This civil action seeks judicial review of the Board's issuance of a new rule entitled "Representation – Case Procedures; Final Rule," 29 C.F.R. Parts 101 102, and 103, 79 Fed. Reg. 74308 (Dec. 15, 2014) (hereafter the "new Rule") (attached hereto).  The new Rule revises and supersedes longstanding regulations implementing Section 9 of the National Labor Relations Act, as amended (the "Act"), pursuant to which the Board conducts union representation elections among employees of employers covered by the Act.

3.     As further explained below, the new Rule makes sweeping changes in pre-election and post-election procedures that depart from the plain language and legislative history of the Act and exceed the Board's statutory authority. The evident purpose of the changes is to achieve the impermissible pro-union objective of accelerating the election process to such an extent that employers will be unable to respond effectively to union organizing campaigns. The new Rule achieves this result by preventing employers in most cases from exercising their statutory rights to appropriate hearings regarding voting eligibility, and by shortening the election period so that employers have no meaningful opportunity to lawfully communicate with affected employees about their electoral rights.  As stated in the strongly dissenting opinion of Board Members Miscimarra and Johnson: "[T]he inescapable impression created by the Final Rule's overriding emphasis on speed is to require employees to vote as quickly as possible – at the time determined exclusively by the petitioning union – at the expense of employees and employers who predictably will have insufficient time to understand and address relevant issues." 79 Fed. Reg. 74,460.

4.     The Board also has provided no adequate justification for overruling many decades of Board and judicial precedent that preserved a careful balance of employer, employee, and union rights in the election process. The Board's failure to provide an adequate justification

supported by substantial evidence in the record renders the new rule arbitrary and capricious and an abuse of discretion, all in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

5.       The new Rule will have a deeply destabilizing and harmful impact on many of Plaintiffs' member employers and their employees in Texas (and elsewhere). If the Board's new rule is allowed to go into effect as scheduled on April 14, 2015, Plaintiffs' member employers will be deprived of their rights to appropriate hearings and due process relating to the conduct of pre-election and post-election proceedings. Plaintiffs' members will also lose their statutorily protected rights to communicate with their own workers on union-election-related issues.

6.       Absent judicial intervention, the new Rule is scheduled to go into effect on April 14, 2015.  For the reasons more fully set forth below, the Rule should be declared unlawful and set aside prior to its effective date.

## JURISDICTION AND VENUE

7.       Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 (Federal question jurisdiction) and the Administrative Procedure Act, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

8.       Venue is proper in this Court under 28 U.S.C. § 1391(e) because ABC of Texas and ABC Central Texas are corporations residing within the Western District of Texas.   In addition, all of the Plaintiffs have members that are incorporated and reside in this District, and the new Rule will adversely impact Plaintiffs and their members in this District.  This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706.

**PARTIES**

9.      Plaintiff ABC of Texas, a Texas corporation headquartered in Austin, is a trade association representing seven chapters and more than 1500 member construction contractors and related employers in Texas.  ABC of Texas advocates on behalf of its chapters and members in support of free enterprise and the Merit Shop philosophy, which holds that work in the construction industry should be awarded and performed on the basis of merit, regardless of labor affiliation.  ABC Central Texas, a Texas corporation headquartered in Austin, is one of the chapter members of ABC of Texas and itself represents more than 200 merit shop construction contractors and related employers in Texas. Plaintiffs are affiliated with Associated Builders and Contractors, Inc., a national trade association representing more than 21,000 chapter members. ABC and many of its members filed comments opposing the new Rule prior to its issuance.

10.      Plaintiff NFIB/Texas represents approximately 24,000 Texas employers from its office located in Austin.   NFIB Texas is the state's leading small business advocacy organization.   NFIB nationally is the leading advocate of small business owners representing hundreds of thousands of small business owners throughout the country. NFIB and  many of its members filed comments opposing the new Rule prior to its issuance.

11.      Plaintiffs have standing to pursue this action on behalf of their members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3)

neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

12.     Plaintiffs' members would otherwise have standing to sue in their own right because they will suffer imminent harm under the new Rule, both legal and practical, unless the Rule is declared unlawful and enjoined by this Court.   *Inter alia*, Plaintiffs' members will be required to spend many hours and many dollars in efforts to prepare in advance for union petitions, and will be compelled to participate in an invalid administrative process, because they will not have sufficient time or opportunity to respond to such petitions under the new Rule.

13.     The interests at stake are germane to Plaintiffs' principles, which include the mission of protecting the rights of their members to freedom from unlawful government interference with the operation of their businesses and to communicate with their employees regarding their rights to refrain from supporting unionization.

14.     The claims asserted and relief requested by Plaintiffs do not require participation of Plaintiffs' members, because Plaintiffs' Complaint is a facial challenge to the new Rule based upon the Rule's unlawful departure from the statutory authority delegated by Congress under the Act.   The Complaint also challenges the arbitrary and capricious nature of the new Rule, based upon the absence of substantial evidence supporting the Rule in the Administrative Record and the failure of the Department to provide adequate explanation of its reversal of four decades of policy implementing the Act's requirements.   The Complaint is entirely based on principles of law and the Administrative Record and thus requires no individual employer participation.

15.     The Defendant Board is an independent federal agency charged with administration and enforcement of the Act. The Board has been delegated rulemaking authority

to carry out these functions, but is required to exercise such rulemaking authority in a manner consistent with the Act and is subject to suit and judicial review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. (the "APA").

**STATUTORY AND REGULATORY FRAMEWORK PRIOR TO THE NEW RULE**

16.     In Section 9 of the Act, 29 U.S.C. 159, Congress spelled out the means by which employees of private sector employers should be allowed to designate unions as their exclusive collective bargaining representatives or to refrain from that action.

17.     Section 9(a) allows unions to represent employees in collective bargaining provided that they are "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes…."  Section 9(b) provides that it is the Board's obligation to "decide in each case" the "unit appropriate for purposes of collective bargaining, "in order to assure to employees the fullest freedom in exercising the rights guaranteed by [the] Act."  Section 9(c) provides that when a petition for a representation election is filed, the Board must investigate the petition and "shall provide for an appropriate hearing upon due notice" before the election is held. This provision also states that "[s]uch hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto."

18.     Congress amended the Act in 1947 (the "Taft-Hartley amendments") because of concerns that the Board had adopted election procedures that were not sufficiently neutral to preserve employee freedom of choice with regard to union representation, including an early attempt by the Board to eliminate pre-election hearings.  See S. Rep. 80-105, 80th Cong. at 3, reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947.

19.     One of the Taft-Hartley Amendments was the enactment of Section 8(c) of the Act, which protects the right of employers to engage in protected speech prior to an election. The Supreme Court has characterized Section 8(c) as reflecting a "policy judgment, which suffuses the NLRA as a whole, as favoring uninhibited, robust, and wide-open debate in labor disputes." *Chamber of Commerce v. Brown*, 554 U.S. 60, 67-68 (2009).

20.     Congress further amended the Act in the Labor Management Reporting and Disclosure Act ("LMRDA") of 1959. At that time, Congress rejected legislative efforts to shorten the time period for holding elections, and specifically rejected a bill that would have deferred voter eligibility issues to post-election hearings.  Senator John F. Kennedy, then-chair of the Conference Committee, repeatedly stated that at least 30 days were required between the petition's filing and the election in order to "safeguard against rushing employees into an election where they are unfamiliar with the issues." 105 Cong. Rec. 5361 (1959), reprinted in 2 LMRDA Hist. 1024.

21.     Pursuant to the foregoing statutory requirements, the Board has for decades adhered to a balanced set of pre-election procedures that have allowed employers sufficient time and opportunity to raise issues affecting the conduct of elections in appropriate pre-election hearings. *See* 29 C.F.R. 102.60, *et seq*. Such issues have included questions regarding the appropriateness of the requested bargaining unit as well as the eligibility of certain categories of employees to vote in the election. *Id*. at 102.66.  Following such hearings, employers have been allowed 25 days to request review of regional director decisions by the Board prior to any tally of ballots in an election. *Id*. at 102.67.

22.     The foregoing procedures of the Board have worked effectively and in a timely but balanced manner to allow the full exercise of free choice by employees with regard to

unionization, while at the same time preserving employer due process and free speech rights, consistent with the protections of the Act. Thus, the Board has consistently met or improved upon its time targets to conduct elections over the last decade: elections have been conducted within a median of 38 days from the filing of union petitions, bettering the Board's time targets of 42 days from petition to election.  In addition, more than 90% of all petitions do not currently require pre-election litigation under the Board's procedures but are resolved by agreement of the parties.  Unions are not prejudiced by the operation of the current procedures, as they have won a substantial majority of elections conducted under the Board's current rules.

### THE BOARD'S NEW RULE

23.     The Board's new Rule is "[m]assive in scale and unforgiving in its effect." 79 Fed. Reg. at 74430  (dissenting opinion). The Rule's primary purpose and effect are to accelerate the timetable of union representation elections, in particular by shortening the time allowed for employers to contest the appropriateness of the petition in pre-election hearings, and in some instances disallowing such hearings altogether on such fundamental questions as who is eligible to vote.

24.     Specific provisions of the new Rule that Plaintiffs contend below violate the Act and/or the APA include the following:

a.     The new Rule improperly shortens the time between the filing of the union petition and the first day of a hearing, except for cases shown to be sufficiently "complex" as to be delayed for a limited additional time period under undefined "special circumstances" and/or "extraordinary circumstances." *See* Section 102.63(a) of the new Rule.

b.     The new Rule imposes an unprecedented new requirement that employers must first file a written "statement of position" providing a long list of burdensome information prior to exercising their statutory right to a pre-election hearing.  Section 102.63(b). Such information must for the first time include, *inter alia*, a list of all employees, work location, shifts, and job classifications of all individuals in the petitioned-for unit, as well as a second list of all such employees (together with the above described additional information) for all individuals in any alternative unit contended for by the employer; and a third list of all such employees (together

8

with the above described additional information) for all individuals who the employer contends should be excluded from the petitioned-for unit.  *Id*.

     c.     The above required statement of position must also for the first time state in writing, *inter alia*, the basis for any employer contention that the petitioned-for unit is inappropriate, the basis for any employer contention for excluding any individual employees from the petitioned-for unit, and the basis for all other issues the employer intends to raise at the hearing. *Id*. *See also* Section 102.66(d). No comparable requirement is imposed on union petitioners.  All of the above information must be provided, upon risk of waiving employers' legal rights to contest such issues at the hearing, in a length of time that is inadequate for many employers to meaningfully understand and exercise their legal rights.

     d.     The new Rule improperly limits the purpose of a hearing conducted under Section 9(c) of the Act as being solely "to determine if a question of representation exists." *See* Section 102.64(a). For the first time, the Rule asserts that "disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit ordinarily need not be litigated or resolved before an election is conducted." *Id*.

     e.     The new Rule also for the first time limits the right of parties in such hearings to introduce into the record evidence to that which is "relevant to the existence of a question of representation" thereby excluding other issues contemplated by Section 9(c) of the Act.  *See* Section 102.66(a).

     f.     The new Rule also for the first time requires parties to make "offers of proof" at the outset of any hearing, and authorizes Regional Directors to bar the parties from entering evidence into the record if such offers of proof are deemed to be insufficient to sustain the proponent's position.  Section 102.66(c).  Employers are further precluded from introducing evidence into the record that is not previously encompasses by various aspects of the newly required Statement of Position.  *Id*.

     g.     The new Rule for the first time denies employers the opportunity to present post-hearing briefs and to review a hearing transcript prior to stating their post-hearing positions on the record, except upon special permission of the Regional Director and addressing only subjects permitted by the Regional Director. Section 102.66(h).

     h.     The new Rule requires employers to disclose to unions unprecedented personal and private information pertaining to employees, including home phone numbers and personal email addresses.  See Section 102.67(l). The Rule drastically shortens the time in which such information must be prepared and provided by employers and requires such personal disclosures even as to employees whose eligibility to vote has been contested and not yet determined.

     i.     The new Rule for the first time eliminates the longstanding requirement that election ballots be impounded while any request for review of the Regional Director's decision is pending at the Board  and eliminates the previous 25-day waiting period for review filings which previously allowed the Board time to consider such requests for review prior to the vote. *See* Section 101.21(d), removed and reserved.

j.      The new Rule for the first time eliminates the right of employers to obtain mandatory Board review of post-election disputes if they enter into stipulated election agreements prior to the election instead of exercising their right to a pre-election hearing. See Section 102.62(b) and 102.69.

25.     Due to the length of the new Rule (182 pages of the Federal Register), the foregoing summary of significant and unprecedented changes which Plaintiffs seek to challenge in this Complaint is necessarily a non-exclusive list.

### CLAIMS FOR RELIEF

**COUNT I –    The New Rule Exceeds The Board's Statutory Authority Under Section 9 of the Act, In Violation of the APA.**

26.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 25 of this Complaint, as though fully set forth below.

27.      As noted above, Section 9(b) of the Act, 29 U.S.C. 159(b) requires the Board to "decide in each case … the unit appropriate for collective bargaining…."  Section 9(c) further provides that when a petition for a representation election is filed, the Board must investigate the petition and "shall provide for an appropriate hearing upon due notice" before the election is held. This provision also states "[s]uch hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto."

28.     Legislative history of the Act including rejected amendments to the Act in 1947 and 1959 confirms that the Act requires the Board to allow employers the right to adequately prepare for, present evidence at and otherwise fairly litigate issues of unit appropriateness and voter eligibility in appropriate pre-election hearings, and that the Board must decide "in each case" the unit that is appropriate for the purposes of collective bargaining based on all the evidence submitted.  Congress further rejected efforts to expedite the election process in the manner now adopted in the new Rule.

29.     The new Rule, by the provisions summarized above and in other ways, violates each of the foregoing statutory provisions and Congressional intent.  Specifically, the new Rule impermissibly restricts employers' ability to prepare for, present evidence and fairly litigate issues of unit appropriateness and voter eligibility in petitioned-for bargaining units.

30.     The new Rule further vests excessive authority in Hearing Officers and excessively derogates the Board's own decision-making authority, both of which violate the foregoing provisions of the Act and Congressional intent and exceeding statutory authority within the meaning of the Administrative Procedure Act.

**COUNT II – The New Rule Violates The Act and The APA By Failing To Assure To Employees The Fullest Freedom In Exercising The Rights Guaranteed By [The] Act.**

31.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 30 of this Complaint, as though fully set forth below.

32.     As noted above, Section 9(b) of the Act requires the Board to "assure to employees the fullest freedom in exercising the rights guaranteed by [the] Act." The new Rule violates this provision, inter alia, by compelling the invasion of privacy rights of the employees of Plaintiffs' member employers by disclosure of their names and job duties to a petitioning union prior to any determination that the petition is supported by a sufficient showing of interest to proceed to an election in an appropriate bargaining unit.

33.      The new Rule further violates the Act and the privacy rights of employees by compelling employers to disclose unprecedented personal information, including personal phone numbers and email addresses, about all employees who are deemed to be part of an appropriate bargaining unit, and additional employees whose status has not been determined prior to a direction of election.

**COUNT III – The New Rule Violates The Act And The APA By Interfering With Protected Speech During Representation Election Campaigns.**

34.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33 of this Complaint, as though fully set forth below.

35.     Section 8(c) of the Act, 29 U.S.C. 158(c) protects the free speech rights of employees, employers, and unions, consistent with similar guarantees afforded by the First Amendment.  As noted above, the Supreme Court has characterized Section 8(c) as favoring uninhibited, robust, and wide-open debate in labor disputes.  *Chamber of Commerce v. Brown*, 554 U.S. 60, 67-68 (2008).  This right only has meaning if there is enough time for parties to communicate with employees about their choice of representation.

36.     The new Rule interferes with these protected rights because it is intended to, and inevitably will, substantially shorten the time between the filing of a representation petition and the date of the election, thereby curtailing the ability of parties to exercise their rights to engage in protected speech.

**COUNT IV – The New Rule Is Arbitrary And Capricious And An Abuse of Agency Discretion Within The Meaning Of The APA**

37.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 36 of this Complaint, as though fully set forth below.

38.     By reversing decades of policy and precedent without adequate justification, the Defendants have acted in an arbitrary and capricious manner in violation of the APA, and the new Rule should be set aside on this additional ground pursuant to 5 U.S.C. § 706.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs respectfully request this Court to enter judgment in their favor and:

1.      Declare that the provisions of the new Rule described above violate the Act and the APA;

2.      Vacate and set aside the provisions of the new Rule shown to be unlawful in this Complaint and any related provisions that cannot be lawfully severed therefrom;

3.      Declare that the new Rule is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law;

4.      Issue an injunction vacating the new Rule and barring the Board from enforcing or applying the challenged portions of the Department's new Rule, together with any other provisions of the Rule that incorporate or otherwise rely on the challenged provisions found to be unlawful.

5.      Award Plaintiffs their costs of litigation, including reasonable attorneys' fees; and

6.      Grant Plaintiffs such other relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Mark Jodon*
Maurice Baskin (*pro hac vice* pending)
Mark Jodon (Bar No. 10669400)
Travis Odom (Bar No.  24056063)
Littler Mendelson, P.C.
1301 McKinney Street
Suite 1900
Houston, TX 77010-3031
Ph: 713.951.9400
Fax: 713.951.9212

13

mbaskin@littler.com
mjodon@littler.com
todom@littler.com
Attorneys for Plaintiffs