IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ASSOCIATED BUILDERS AND CONTRACTORS OF TEXAS, INC., et al.,

          Plaintiffs,

       v.

NATIONAL LABOR RELATIONS BOARD,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No. 1:15-CV-00026-RP

**NATIONAL LABOR RELATIONS BOARD'S MEMORANDUM OF POINTS AND AUTHORITIES (i) IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS and CROSS-MOTION FOR SUMMARY JUDGMENT, and (ii) IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel*

DAWN L. GOLDSTEIN
KEVIN P. FLANAGAN
*Supervisory Attorneys*

PAUL A. THOMAS
MARISSA A. WAGNER
DAVID H. MORI
MICHAEL ELLEMENT
KEVIN J. HOBSON
IGOR VOLYNETS
*Attorneys*

BARBARA A. O'NEILL
*Assistant General Counsel for Contempt,
  Compliance, and Special Litigation*
Phone: (202) 273-2958
Fax: (202) 273-4244
E-mail: barbara.oneill@nlrb.gov

National Labor Relations Board
1099 14th Street, NW, Suite 10700
Washington, D.C. 20570

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction and Statement of the Case ................................................................ 1

II.   ABC's Challenges to Discretionary Rules Are Not Justiciable ................................ 3

III.  ABC's Statutory, Constitutional, and APA Challenges to the Rule Lack Merit .................... 6

    A.   Standard of Review ........................................................................................ 6

        1.   The Board is entitled to extraordinary deference in crafting its  own procedures ............................................................................................. 6

        2.   Lawful rules need only be rational and well-explained ........................... 6

    B.   All of the Rule's Changes Are Reasonable and Consistent with the NLRA, the Constitution, and the APA ............................................................................ 7

        1.   The Rule furthers the Board's permissible and explicitly articulated goals ........ 7

            a.   Improving casehandling processes is not arbitrary and capricious .............. 9

            b.   The Rule does not unduly burden small employers ....................................... 10

        2.   The amendments are consistent with Sections 3 and 9 and due process. .......... 12

            a.   The amendments provide for an appropriate hearing upon due notice ...... 12

            b.   An "appropriate" pre-election hearing need not include irrelevant evidence about individual eligibility or inclusion questions .......................... 14

            c.   ABC fails to show that the Rule's deferral of litigation that may be mooted is arbitrary or capricious ................................................................... 17

        3.   The Rule is consistent with applicable free speech protections because employers will continue to have a meaningful opportunity to campaign .......... 18

        4.   The amendments fully implement Section 3(b) of the Act. ............................... 20

        5.   The Rule's voter list provisions are consistent with the NLRA and strike a reasonable balance between privacy and furthering the goals of the Act .......... 21

            a.   Expanding the voter list requirements is consistent with the Act ............... 22

            b.   Expanded voter list disclosure provisions strike a reasonable balance between privacy and furthering the goals of the Act ....................................... 22

i

IV.     Even if All of ABC's Challenges Succeed, the Remainder of the Rule Is Severable ........... 25

V.      Conclusion.................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES:**                                                         **Page(s)**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ................................................................................................ 3, 5

*Action Alliance of Senior Citizens of Greater Phila. v. Heckler,*
    789 F.2d 931 (D.C. Cir. 1986) ..................................................................................4

*Barre-National, Inc.,*
    316 NLRB 877 (1995) ...............................................................................................15

*Bituma Corp. v. NLRB,*
    23 F.3d 1432 (8th Cir. 1994) ............................................................................. 14, 15

*Boire v. Greyhound Corp.,*
    376 U.S. 473 (1964) ...................................................................................2, 5, 6, 8

*Browning v. City of Odessa, Tex.,*
    990 F.2d 842 (5th Cir. 1993) ...................................................................................12

*Cent. & S.W. Servs., Inc.  v. EPA,*
    220 F.3d 683 (5th Cir. 2000) .....................................................................................3

*Chevron USA Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ...................................................................................................6

*Croft Metals, Inc.,*
    337 NLRB 688 (2002) ..............................................................................................14

*Davis County Solid Waste Management v. U.S. E.P.A.,*
    108 F.3d 1454 (D.C. Cir. 1997) ...............................................................................25

*Decker v. Nw. Envtl. Def. Ctr.,*
    133 S. Ct. 1326 (2013) ...............................................................................................8

*Excelsior Underwear, Inc.,*
    156 NLRB 1236 (1966) ................................................................................21, 22, 23

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502, 515-16 (2009) ......................................................................................9

*Firstar Bank, NA v. Faul*,
    253 F.3d 982 (7th Cir. 2001) ......................................................................................17

*Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*,
    635 F.3d 685 (5th Cir. 2011) ......................................................................................12

*Hayward v. U.S. Dep't of Labor*,
    536 F.3d 376 (5th Cir. 2008) ........................................................................................6

*Howard University*,
    290 NLRB 1006 (1988) ..............................................................................................24

*Humble Oil & Ref. Co.*,
    53 NLRB 116 (1943) ..................................................................................................17

*Inland Empire Dist. Council, Lumber & Sawmill Workers Union v. Millis*,
    325 U.S. 697 (1945) .........................................................................................2, 12, 17

*Learmonth v. Sears, Roebuck & Co.*,
    710 F.3d 249 (5th Cir. 2013) ......................................................................................11

*Lorillard v. Pons*,
    434 U.S. 575 (1978) ....................................................................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................3

*MD/DC/DE Broadcasters Ass'n v. FCC*,
    236 F.3d 13 (D.C. Cir. 2001) ....................................................................................25

*Mike O'Connor Chevrolet-Buick-GMC Co.*,
    209 NLRB 701 (1974) ..................................................................................................5

*Motor Vehicle Mfrs Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*,
    463 U.S. 29 (1983) ....................................................................................................6, 7

*Myers v. Bethlehem Shipbuilding Corp.*,
    303 U.S. 41 (1938) ........................................................................................................5

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    833 F.2d 583 (5th Cir. 1987) ........................................................................................3

*NLRB v. A.J. Tower Co.*,
    329 U.S. 324 (1946) ................................................................... 1, 6, 17

*NLRB v. Dickerson-Chapman, Inc.*,
    964 F.2d 493 (5th Cir. 1992) .................................................................. 4

*NLRB v. Gissel Packing Co.*,
    395 U.S. 575 (1969) ............................................................................. 18

*NLRB v. J. Weingarten, Inc.*,
    420 U.S. 251 (1975) ............................................................................. 22

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969) ............................................................................. 21

*Reed v. NLRB*,
    927 F.2d 1249 (D.C. Cir. 1991) ........................................................... 23

*Reno v. Flores*,
    507 U.S. 292 (1993) ............................................................................... 3

*Republic Steel Corp. v. NLRB*,
    311 U.S. 7 (1940) .................................................................................. 5

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    133 S. Ct. 817 (2013) ............................................................................. 6

*U.S. v. Rainbow Family*,
    695 F. Supp. 294 (E.D. Tex. 1988) ...................................................... 25

*Utica Mutual Ins. Co. v. Vincent*,
    375 F.2d 129 (2d Cir. 1967) ................................................................. 17

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,*,
    435 U.S. 519 (1978) ............................................................................... 6

*Wilkinson v. Austin*,
    545 U.S. 209 (2005) ...................................................................... 11, 12

**STATUTES:**

5 U.S.C. § 554(a)(6) .................................................................................................... 2, 6

5 U.S.C. § 706(2) ............................................................................................................6

5 U.S.C. § 706(2)(A) .......................................................................................................3

5 U.S.C. § 706(2)(B) .......................................................................................................3

5 U.S.C. § 706(2)(C) .......................................................................................................3

29 U.S.C. § 153(b) .........................................................................................................20

29 U.S.C. § 156 ...............................................................................................................2

29 U.S.C. § 157 ...............................................................................................................1

29 U.S.C. § 159 .......................................................................................................passim

29 U.S.C. § 159(b) .........................................................................................................12

29 U.S.C. § 159(c)(1) .................................................................................................1, 12

29 U.S.C. § 159(c)(1)(B) ...............................................................................................14

29 U.S.C. § 159(c)(4) .......................................................................................................1

29 U.S.C. § 160 ...............................................................................................................1

**REGULATIONS:**

29 C.F.R. § 102.177 .......................................................................................................23

29 C.F.R. § 103.30(a)(1) ................................................................................................16

*Representation-Case Procedures*, 79 Fed. Reg. 74308 (Dec. 15, 2014) ..........................1

79 Fed. Reg. 74308-11 .............................................................................................passim

79 Fed. Reg. 74315-24 .............................................................................................passim

79 Fed. Reg. 74326 ........................................................................................................20

79 Fed. Reg. 74331 ........................................................................................................ 21

79 Fed. Reg. 74332 ........................................................................................................ 21

79 Fed. Reg. 74337 ................................................................................................................22

79 Fed. Reg. 74338-39 .........................................................................................................22

79 Fed. Reg. 74342 ................................................................................................................24

79 Fed. Reg. 74343 ................................................................................................................24

79 Fed. Reg. 74344 .........................................................................................................18, 22

79 Fed. Reg. 74346-47 ...................................................................................................23, 24

79 Fed. Reg. 74348 ................................................................................................................24

79 Fed. Reg. 74349 ................................................................................................................24

79 Fed. Reg. 74352 ................................................................................................................24

79 Fed. Reg. 74353 ...........................................................................................................8, 11

79 Fed. Reg. 74354 ................................................................................................................11

79 Fed. Reg. 74358-60 .........................................................................................................23

79 Fed. Reg. 74362-64 .................................................................................................8, 10, 13

79 Fed. Reg. 74367 ...........................................................................................................8, 13

79 Fed. Reg. 74368 .........................................................................................................10, 25

79 Fed. Reg. 74370-77 ...................................................................................................passim

79 Fed. Reg. 74380-81 .........................................................................................................13

79 Fed. Reg. 74383-91 ...................................................................................................passim

79 Fed. Reg. 74393-95 .....................................................................................................13, 15

79 Fed. Reg. 74398 ................................................................................................................14

79 Fed. Reg. 74401-02 .........................................................................................................14

79 Fed. Reg. 74408 .....................................................................................................5, 17, 21

79 Fed. Reg. 74409 ................................................................................................................21

79 Fed. Reg. 74410 .........................................................................................................21, 25

79 Fed. Reg. 74413 ...............................................................................................14, 15, 21

79 Fed. Reg. 74414 ...............................................................................................................25

79 Fed. Reg. 74418 .................................................................................................................9

79 Fed. Reg. 74419 .................................................................................................................9

79 Fed. Reg. 74421 ...............................................................................................................23

79 Fed. Reg. 74422 ..........................................................................................................5, 7, 8

79 Fed. Reg. 74423-28 ....................................................................................................passim

79 Fed. Reg. 74430 .................................................................................................................2

79 Fed. Reg. 74464 ...............................................................................................................24

79 Fed. Reg. 74480-81 .............................................................................................11, 14, 23

79 Fed. Reg. 74482 ...............................................................................................................13

79 Fed. Reg. 74483 ...............................................................................................................13

79 Fed. Reg. 74484 ...............................................................................................................14

79 Fed. Reg. 74485 ...............................................................................................................13

79 Fed. Reg. 74486 .........................................................................................................11, 23

**LEGISLATIVE HISTORY:**

S. Comm. on the Judiciary, 79th Cong., Comparative Print on Revision of S. 7,
(Comm. Print 1945) ..............................................................................................................2

NLRB Representation Casehandling Manual, Section 11302.1 (1975).....................................20

OMB Circular A-11 Part 6, Section 200.10............................................................................8

I.      **Introduction and Statement of the Case**

The National Labor Relations Act (NLRA or Act), assigns the National Labor Relations Board (NLRB, Board, or Agency) two principal responsibilities: preventing unfair labor practices, 29 U.S.C. § 160, and resolving questions concerning representation, *id.* § 159. This case is about a rule that amends Board procedures for processing representation petitions. It issued December 15, 2014, and is scheduled to take effect April 14, 2015. 79 Fed. Reg. 74308 (the Rule or the amendments).

The NLRA grants employees the right "to bargain collectively through representatives of their own choosing . . . and to . . . refrain from . . . such activit[y]." *Id.* § 157. Sometimes employees and their employer voluntarily agree that an appropriate unit of employees should be represented for purposes of collective bargaining (usually, by a union). But if not, the Board is authorized by Section 9 to conduct a secret ballot election and certify the results. *Id.* § 159.

Section 9 sets forth only the basic steps for resolving a question of representation. First, a petition is filed with the Agency by an employee, labor organization, or employer. *Id.* § 159(c)(1). Second, if there is reasonable cause, an appropriate hearing is held on due notice to determine whether a question of representation exists, unless the parties waive the hearing and agree to an election. *Id.* § 159(c)(1), (4). A hearing officer conducts the hearing, but makes no recommendations. Third, if a question of representation exists, a secret ballot election by is conducted. Fourth, election results are certified. *Id.*

Aside from these general requirements, the statute says very little about representation case procedures. Instead, Section 9 grants the Board "a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946). The "broad" and "general" statutory requirements that "notice must be 'due' [and] the hearing 'appropriate'" reflect Congress's

understanding of the Board's "great latitude concerning procedural details." *Inland Empire Dist., Lumber Workers v. Millis*, 325 U.S. 697, 706 (1945).

Congress deliberately exempted Section 9 proceedings from the Administrative Procedure Act's (APA) provisions governing adjudications, *see* 5 U.S.C. § 554(a)(6), because of "the simplicity of the issues, the great number of cases, and the exceptional need for expedition." S. Comm. on the Judiciary, 79th Cong., Comparative Print on Revision of S. 7, at 7 (Comm. Print 1945). And because of this need for expedition, Congress also deferred judicial review of representation decisions unless and until the Board enters an unfair labor practice order based on those decisions. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964).

In Section 6, 29 U.S.C. § 156, and Section 9(c), *id.* § 159(c)(1), Congress granted the Board authority to prescribe rules for processing election petitions. The Board has amended these procedures repeatedly, usually without notice and comment. 79 Fed. Reg. 74310. However, this Rule follows comment periods totaling 141 days and 4 days of hearings. *Id.* at 74311.

The Rule makes some 25 changes, summarized at 79 Fed. Reg. 74308-10. The Rule's provisions apply equally to initial organizing cases (when a union files a petition seeking to represent nonunion employees) and to decertification cases (when employees file a petition seeking to rid themselves of an unwanted incumbent union). These changes provide targeted solutions to discrete, specifically identified problems, enabling the Board to better protect employees' rights by fairly, accurately, and expeditiously resolving questions of representation. The changes also advance goals of efficiency, transparency, uniformity, and adapting new technology to further the Act's purposes. *Id.* at 74315. Many of these changes are uncontroversial. *See id.* at 74430 (describing features of the Rule as to which there is no substantive disagreement between the Board majority and the dissent). Plaintiffs (collectively, ABC) facially challenge 12 of the 25 Rule changes. *See infra* note 36.

A substantial number of ABC's claims are not ripe for a pre-enforcement facial challenge and should be dismissed—specifically, the claims that amendments (Am.) 5, 7-11, 15, and 17 are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C), or "contrary to constitutional right," *id.* at § 706(2)(B). Even if ripe, they are insufficient as a matter of law, as are ABC's claims that the Rule's provisions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* at § 706(2)(A), because the Rule is fully consistent with the NLRA, APA, and Constitution. For these reasons, the Board's partial motion to dismiss and cross-motion for summary judgment should be granted, and ABC's motion denied.

## II.   ABC's Challenges to Discretionary Rules Are Not Justiciable.

In every case, the plaintiff must prove federal subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). To assert jurisdiction over a claim, federal courts must find as a threshold matter that the claim is ripe for judicial review.[1] ABC cannot carry that burden with respect to its principal claims, which are that the Rule violates the NLRA by depriving employers both of a fair hearing on critical election issues (Motion for Summary Judgment (MSJ) 11-17), and an adequate opportunity to campaign (MSJ 17-22).[2]

As this is a facial challenge, ABC "must establish that no set of circumstances exists under which the [regulation] would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993). This is true as to both constitutional and statutory challenges. *Id. Flores* effectively disposes of ABC's primary challenges, because where challenged portions of a rule are discretionary, "[t]o hold the provision invalid on its face, a court would have to conclude that the provision stands in conflict with the

---

[1] "A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)); *see also Cent. & S. W. Servs., Inc. v. EPA,* 220 F.3d 683, 690 (5th Cir. 2000).

[2] The Board does not dispute the ripeness of ABC's allegation that certain provisions of the Rule are "arbitrary and capricious," as that claim relies solely upon the existing administrative record.

statute regardless of how the agency exercises its discretion." *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 939-42 (D.C. Cir. 1986).

ABC's statutory challenges attack discretionary provisions of the Rule, and are thus particularly ill-suited for review now. ABC claims the Rule impairs its Section 9 right to an "appropriate" pre-election hearing by permitting regional directors (RDs) to exclude evidence as to individual voter eligibility and unit inclusions, particularly where such issues are not raised in the respondent's statement of position. But this challenge overlooks that the choice whether to decide such issues prior to the election or use the Board's challenged ballot procedure to resolve such issues afterwards, if necessary, has long been left to the sound discretion of the RD and the Board. *NLRB v. Dickerson-Chapman, Inc.*, 964 F.2d 493, 496-497, 500 (5th Cir. 1992). The same is true under the Rule, which merely affords the RD additional discretion to allow or defer the taking of evidence at the pre-election hearing concerning discrete individual eligibility and inclusion issues. Precluding parties from litigating issues not raised in their position statement is also subject to the RD's discretion as to whether "good cause" justifies raising new issues at the hearing. In short, RDs have discretion to permit litigation and decide discrete individual eligibility or inclusion issues.

Such fact-bound, discretionary determinations are not grist for a facial challenge like ABC's. Rather, an aggrieved party may bring an as-applied challenge if the Rule's discretionary provisions actually impact a proceeding, so that a reviewing court can (among other things) assess whether the Board's alleged error renders the pre-election hearing "inappropriate."

Similarly unripe for facial challenge review is ABC's speculative claim (MSJ 20-22) that the Rule so truncates the election process, parties are deprived of a reasonable opportunity to campaign. As the Rule states:

> [W]e think that the regional directors should continue to hold elections as soon as practicable in the circumstances of each case. Where there is no need to wait, the election should proceed; where there is a need to wait, the election should not proceed.

79 Fed. Reg. 74422. The Rule makes various incremental changes, such as permitting RDs to dispense with unnecessary briefing (Am. 11) and ending a policy of automatically staying all directed elections for 25 days (Am. 15). *Id.* at 74408 n.454. But the impact of those incremental changes on a representation campaign's length in a particular case is unknown and unknowable at this time. ABC's allegations are not justiciable absent factual development in a concrete case.[3]

Waiting to bring an "as applied" challenge would present no hardship to ABC or its members. Such a challenge is the normal way for an employer to secure review of a Board election. Unless and until a bargaining representative prevails in an election, is certified, and a Board order based on that certification is enforced by a court, the employer is under no legal obligation to bargain.[4] Nor are employers required to assume onerous risks to secure as applied review. *Cf. Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967) (finding challenge ripe in large part because plaintiffs were faced with "dilemma" of either incurring substantial economic costs to comply with a labeling rule or risking massive criminal and civil penalties). Board orders are remedial, not punitive. *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10-12 (1940).[5] For these reasons, ABC's challenges to the Rule's discretionary provisions should be dismissed.

---

[3] In fact, as discussed below at Part III.B.3, the Rule expressly allows the RD to consider the parties' desire to campaign in scheduling elections. *See* 79 Fed. Reg. 74318.

[4] *See, e.g.*, *Boire*, 376 U.S. at 477-79 (describing the statutory procedure for securing as-applied review); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) ("No power to enforce an order is conferred upon the Board. To secure enforcement, the Board must apply to a Circuit Court of Appeals for its affirmance. And until the Board's order has been affirmed by the appropriate Circuit Court of Appeals, no penalty accrues for disobeying it.").

[5] If an employer's eventual challenge fails, the remedy is to order the employer to prospectively recognize and bargain with the union and, in the event the union challenges any changes made to employees' terms and conditions of employment following its election day victory, to restore the status quo ante and make employees whole for any losses suffered as a result of those changes. *See Mike O'Connor Chevrolet-Buick-GMC Co.*, 209 NLRB 701 (1974), *enf. denied on other grounds*, 512 F.2d 684 (8th Cir. 1975).

### III. ABC's Statutory, Constitutional, and APA Challenges to the Rule Lack Merit.

#### A.  Standard of Review

##### 1.  The Board is entitled to extraordinary deference in crafting its own procedures.

The initial question is whether the Board's amendments to its election procedures directly conflict with statutory text speaking to the "precise question at issue," or with the Constitution. *Chevron USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see* 5 U.S.C. § 706(2). Deference is especially high for all questions of agency procedure. The Supreme Court "has for more than [seven] decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978).

The deference owed to the Board's amendment of its election procedures is extraordinary. As noted in Part I, an unbroken line of Supreme Court precedent acknowledges the unique amount of control Congress has granted the Board over representation proceedings. *See, e.g., Boire*, 376 U.S. at 476-79; *A.J. Tower Co.*, 329 U.S. at 330-31; *see also* 5 U.S.C. § 554(a)(6) (exempting election cases from the APA).

##### 2.  Lawful rules need only be rational and well-explained.

The Court may set aside a rule only where the rule is "arbitrary, capricious, or manifestly contrary to the statute." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 826 (2013) (quotation omitted); *see also Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379 (5th Cir. 2008). Under this standard, "a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42 (1983). Although an agency must provide its reasoning for adopting a rule, the court's review is limited to

searching only for "a rational connection between the facts found and the choice made." *Id.* at 43 (quotation omitted).

An agency rule will be set aside if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citations and quotations omitted). The instant Rule suffers from none of these deficiencies.

### B. All of the Rule's Changes Are Reasonable and Consistent with the NLRA, the Constitution, and the APA.

#### 1. The Rule furthers the Board's permissible and explicitly articulated goals.

Decades of experience under the current framework for administering representation elections led the Board to conclude that its procedures suffer from a variety of deficiencies and could be improved to better achieve the key congressional goal of resolving questions of representation expeditiously and fairly:

> For example, pre-election litigation has at times been disordered, hampered by surprise and frivolous disputes, and side-tracked by testimony about matters that need not be decided at that time. Additionally, the process for Board review of regional director actions has resulted in unnecessary delays. Moreover, some rules have become outdated as a result of changes in communications technology and practice.

79 Fed. Reg. 74308.

ABC's criticism that the Rule's changes are unnecessary and overbroad (MSJ 23, 25) utterly ignores the Board's explanation that the Rule "address[es] discrete problems with targeted solutions." *Id.* at 74315, 74422. Each of these changes serves a distinct set of purposes, including minimizing unnecessary barriers to the fair and expeditious resolution of questions concerning representation, eliminating unnecessary and duplicative litigation, providing for a more informed electorate and fair and accurate recording of votes, simplifying representation case procedures and rendering them more transparent and uniform across regions, reducing the cost of such proceedings

7

to the public and the agency, and modernizing the Board's processes, with a particular emphasis on effectively using new technology. *Id.* at 74315, 74317, 74422, 74428.

The legitimacy of these purposes is manifest; for example, efficiency and the adoption of best government practices are patently valid goals for any agency rulemaking.[6] In fact, many amendments are not wholesale changes, but rather codifications of the Agency's Casehandling Manual's (CHM) procedural and operational guidance, preexisting best practices among the Board's 26 regions, and the Agency's Best Practices Committee guidance. "Transparency allows the public to understand the process and uniformity allows the parties to form reasonable expectations. These two related principles also ensure that the protection of statutory rights does not vary arbitrarily from case to case or region to region." 79 Fed. Reg. 74315.[7]

Those amendments primarily concerned with increasing efficiency are aimed at eliminating not only unnecessary litigation (and its resultant costs to the parties and the Board), but also needless delay in resolving the question of whether employees wish to be represented. As noted, once a valid representation case petition is filed, a central goal of the Act is to provide a prompt election to answer the question of representation. *See Boire*, 376 U.S. at 476-79.

Although many of the amendments have little to do with the timing of procedures, the Rule also specifically targets those cases where there has been greater delay in conducting the election. The Board found that much of this delay occurs in those cases that are fully litigated. Indeed, the

---

[6] *See, e.g.*, *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1340 (2013) (Scalia, J., concurring in part, dissenting in part) ("Making regulatory programs effective is the purpose of rulemaking . . . .") (emphasis removed); *see also* OMB Circular A-11 Part 6, Section 200.10 (instructing agencies, pursuant to relevant statutes, to "[i]nstill a performance and efficiency culture that inspires continuous improvement, . . . focus on better outcomes and lower-cost ways to operate . . . [and] search for increasingly effective practices") *available at* http://go.usa.gov/3ajJw

[7] Such best practices codification includes requiring employers to provide lists of employee names and job classifications in petitioned-for and employer's alternative unit, *id.* at 74367, scheduling the pre-election hearing about eight days after the notice of hearing issues, *id.* at 74309, 74353, 74373, requiring parties to address themselves to the relevant issues, *id.* at 74363, 74309, and setting the election date at "the earliest date practicable," *id.* at 74310, 74422.

time between petition filing and the election is almost twice as long in such cases. 79 Fed. Reg. 74317 (38 days versus almost 70 days). Thus, the Rule targets delay at many stages of fully litigated cases, and tailors solutions to address specific issues at those different stages.[8]

### a.  Improving casehandling processes is not arbitrary and capricious.

ABC argues that there is no need for the Rule because the Agency is meeting its time targets for conducting elections. (MSJ 5). But ABC's focus on speed ignores the specific, articulated reasons underlying the various amendments. *Id.* at 74315-16. In any event, the Board may legitimately strive to improve its processes even if the Agency is meeting its current time targets. Those targets have always been measured by what could be achieved under then-current conditions, "in spite of" structural barriers imposed by the former rules. *Id.* at 74316-17. Under ABC's reasoning, whenever the Agency is meeting its time targets, any effort to improve agency procedures is arbitrary. This is the antithesis of good government. *See supra* note 6.[9] No stakeholder is entitled to insist upon longstanding agency practices remaining unchanged where, as here, an agency has reasonably determined that incremental improvements will further the statute's purposes.[10]

---

[8] Despite ABC's claim to the contrary (MSJ 23-24), the Board's targeted solution for the delay related to its blocking charge policy is reasonable. Under that policy, the Agency will not conduct an election when it believes that a charged unfair labor practice, if proved, would have a tendency to interfere with employee free choice. *Id.* at 74418. The Rule deters abuse of this policy by requiring a party seeking to block an election to simultaneously file a written offer of proof with its charge and to promptly make its witnesses available. *Id.* at 74419. The Board rejected the more drastic revisions proposed by others because those proposals failed to "ensure that employees can express their choice of representative free of unlawful coercion." *Id.* at 74418-19; *see also id.* at 74428-29.

[9] ABC questions whether the Rule is necessary given unions' election win rate. (MSJ 5). But the Rule was not promulgated to improve or reduce that rate. Moreover, as the Board explained, election result statistics are "unhelpful in determining whether representation case procedures are fulfilling their statutory purpose as fully and efficiently as possible." 79 Fed. Reg. 74317.

[10] ABC's reminder (MSJ 10-11, 23 n.14) that agencies bear a higher burden to justify a reversal of longstanding policy, if the reversal "rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009), is irrelevant because ABC has pointed to no such factual findings or legitimate reliance interests.

As discussed more fully below, each of the amendments ABC has challenged serve legitimate statutory objectives.

### b. The Rule does not unduly burden small employers.

ABC argues that the Rule will adversely impact small employers, especially those in the construction industry, who it claims will be overwhelmed by cascading demands to compile and disclose information on shorter deadlines and to be prepared earlier in the election process. Specifically, ABC complains that onerous compliance burdens are imposed by the requirements that the statement of position form be submitted seven days after service of the notice of hearing, that the pre-election hearing open one day later (MSJ 15-16 n.10; Ams. 7 and 5), and that the employer disclose voter contact information to the petitioner two business days after a direction of election (MSJ 18; Am. 20).

To the extent that the Rule sets new or shorter deadlines, those deadlines were formulated on the basis of existing best practices, *see supra* n. 7, and the Board's assessment, as tested during the notice and comment process, of what was realistically possible for the generality of representation case participants. Thus, the Board rejected ABC's claim (MSJ 5-6, 15) that employers generally need more time and pre-hearing discovery to submit the Statement of Position form and prepare for the hearing under the new time frame. The Board explained that the new form largely requires parties to do what they already need to do to prepare for a pre-election hearing. *Id.* at 74363-64, 74375. Moreover, employers will possess all necessary information to fulfill these requirements given that the petition will have identified the union's view of an appropriate unit, and employers already know all requisite facts to take a position on the unit and other issues. *See id.* at 74368, 74372-74, 74424-25. And employers who wish to retain counsel can do so within the Rule's time frames. *Id.* at 74376-77.

Similarly, the Board carefully analyzed the practicability of the two business-day timeframe for providing voter contact information following a direction of election. Employers will not be

preparing this notice from scratch after they receive the direction of election; rather, they will be put on notice to begin this task as soon a petition is received, because along with the petition, employers will receive a description of representation case procedures that includes the specific voter list requirement. *Id.* at 74354. Because the mandated position statement already requires the employer to compile an initial list of employee names, work locations, shifts, and job classifications, the demands in the two days following the direction of election are limited: the employer need only add employees' contact information already in its possession and make any necessary alterations to reflect employee turnover or unit changes. *Id.* at 74353. Technological advances in communication make this timeframe practicable. *Id.*[11]

In creating these time frames, the Board did not set absolute, hard-and-fast rules, but instead reasonably provided that all of those deadlines are subject to modification by the RD or the Board under varying standards.[12] ABC's arguments take account neither of the Board's explanation for its general rules nor of its providing for exceptions for good cause shown. The amendments at issue are well within the Board's wide discretion over its representation case rules, as well as the overarching *Vermont Yankee* principle that agencies are generally free to formulate their own procedural rules. *See supra* Part III.A.1.[13]

---

[11] *See also id.* at 74354 (explaining that the special eligibility formula relevant to the construction industry does not render Rule's timeframe unworkable).

[12] An RD may extend the Statement of Position due date (Am. 7) for up to two business days for special circumstances and even further for extraordinary circumstances. *Id.* at 74374, 74481. Similarly, the RD can set the hearing to open more than eight days following service of the petition (Am. 5) based upon the complexity of the issues raised. *Id.* at 74371, 74480. And if employers show extraordinary circumstances, they may produce voter contact information more than two days after the direction of election. *Id.* at 74486.

[13] In a skeletal fashion, ABC argues that the hearing and statement of position timeframes (Ams. 5, 7) are due process violations (MSJ 15, n.10) and that ending parties' right to file post-hearing briefs (Am. 11) violates the Act (MSJ 17, n.11). The Court should reject these inadequately developed points. *See, e.g., Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 267 n.7 (5th Cir. 2013). In any event, amendments 5 and 7 are lawful because shorter notice timeframes and less formal procedures have been upheld in various settings, some with more serious implications than here. *See, e.g., Wilkinson* v.

**2.   The amendments are consistent with Sections 3 and 9 and due process.**

**a.   The amendments provide for an appropriate hearing upon due notice.**

Section 9 of the Act states that "[t]he Board shall decide in each case . . . the unit appropriate

for the purposes of collective bargaining[.]" 29 U.S.C. § 159(b). It also states:

> [T]he Board shall investigate [representation] petition[s] and if it has reasonable cause to
> believe that a question of representation affecting commerce exists shall provide for *an*
> *appropriate hearing upon due notice*. . . . If the Board finds upon the record of such hearing
> that such a question of representation exists, it shall direct an election by secret ballot
> and shall certify the results thereof.

29 U.S.C. § 159(c)(1) (emphasis added). Accordingly, the statutory purpose of the pre-election

hearing is "to determine if there is a question of representation" in an appropriate unit. 79 Fed. Reg.

74380; *see also id.* at 74385 (discussing 29 U.S.C. § 159(c)(1)).

Section 9's hearing requirements grant the Board broad discretion in choosing what

procedure to use to decide whether a question of representation exists. *Inland Empire*, 325 U.S. at

706. As the Supreme Court explained, *id.* at 706-10, the phrase "appropriate hearing upon due

notice" is very broad:

> Obviously great latitude concerning procedural details is contemplated. Requirements of
> formality and rigidity are altogether lacking. The notice must be "due," the hearing
> "appropriate." These requirements are related to the character of the proceeding of
> which the hearing is only a part. That proceeding is not technical. It is an "investigation,"
> essentially informal, not adversary. The investigation is not required to take any
> particular form or [be] confined to the hearing. . . . We think no substantial question of
> due process is presented.

Contrary to ABC (MSJ 6), the Rule is fully consistent with Section 9 and due process

because it provides for an appropriate pre-election hearing upon due notice. Consistent with the

---

*Austin,* 545 U.S. 209, 213, 216, 229 (2005) (upholding constitutionality of 48-hour notice prior to
prisoners' placement in a "Supermax" facility); *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.,* 635 F.3d
685, 690-91 (5th Cir. 2011) (brief school suspensions require only "informal give and take" between
the parties); *Browning v. City of Odessa, Tex.,* 990 F.2d 842, 844 (5th Cir. 1993) (hearing prior to
employment termination "need not be elaborate"). And because the Rule grants RDs discretion to
permit briefing when they conclude it would be helpful, 79 Fed. Reg. at 74427, there is no merit to
ABC's claim that amendment 11 "will deprive the Regional Directors of access to detailed and
coherent summaries of what has transpired in complex pre-election hearings." (MSJ 17 n.11).

statutory language, the Board's amended regulations state that "[t]he purpose of a hearing conducted under Section 9(c) of the Act is to determine if a question of representation exists," Amended § 102.64(a), 79 Fed. Reg. 74482, and they grant parties the right to introduce evidence at the pre-election hearing which is "relevant to the existence of a question of representation," Amended § 102.66(a), *id.* at 74483. In addition, the Rule makes clear that unit appropriateness questions are relevant to the existence of a question of representation, and therefore those issues will be litigated at a pre-election hearing and decided by the RD. Amended §§ 102.64(a), 102.67(a), *id.* at 74482, 74485.[14] For these reasons, the amendments clarifying the purpose of the pre-election hearing, and the evidence that parties have a right to introduce at that hearing, are fully consistent with the statute. *See id.* at 74309 (Am. 9, 10); 74380-81; 74383-87, 74391.

The other amendments governing pre-election hearing procedures are also consistent with the Act and due process because they will make hearings more appropriate, not less. Requiring parties to provide a timely statement of position on the issues they plan to raise focuses all parties' attention on the issues in dispute. Not only does this identification of the issues make the pre-election hearing more efficient, but by bringing the party's concerns into the open, it facilitates negotiation of election agreements which eliminate the need for pre-election hearings altogether.[15] Opening the hearing with a petitioner responding on the record to the issues raised by other parties' statements of position promises to focus the hearing on resolving disputed issues.[16] Finally, given the APA's exemption of representation cases from formal adjudication requirements, it is clearly

---

[14] *See also id.* at 74380 n.346, 74384-85 (evidence must be taken, among other things on jurisdictional, election bar, labor organization, and eligibility formula issues raised by the parties in addition to unit appropriateness issues).

[15] *See id.* at 74309 (Am. 7); 74362-64, 74367, 74373, 74424 (Statement of Position); 74424 & n.516 (preclusion); 74424-25 & n.519 (nonpetitioning unions must give Statement of Position).

[16] *See id.* at 74309 (Am. 8); 74393-94. However, contrary to ABC (MSJ 6, 16), the Rule specifically rejected the proposal that parties make offers of proof on each contested issue before the hearing officer would proceed to hear any testimony. *See id.* at 74394-95, 74429.

permissible—and appropriate—to give RDs discretion to allow post-hearing briefing only when they conclude that it would aid in determining whether a question of representation exists.[17]

The hearing officer's role under the Rule is also consistent with the Act. Like the Act, the Rule provides that the hearing officer "shall make no recommendations" about the pre-election hearing. *Compare* 29 U.S.C. § 159(c)(1)(B), *with* Amended § 102.66(i), 79 Fed. Reg. 74484.[18]

The Rule's provisions that, except in unusually complex cases, the hearing open 8 days after service of the hearing notice, and that a position statement be due the day before the hearing are each consistent with due notice.[19] In fact, the Rule does not require any party to prepare for a hearing in a shorter time than permitted under pre-existing Board law,[20] and the 8-day hearing timeframe largely codifies existing regional best practice. *Id.* at 74309, 74370.

> **b. An "appropriate" pre-election hearing need not include irrelevant evidence about individual eligibility or inclusion questions.**

The statute says nothing at all about a requirement to resolve all disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit before an election. Further, "deferring the question of voter eligibility until after an election is an accepted NLRB practice." *See Bituma Corp. v. NLRB*, 23 F.3d 1432, 1436 (8th Cir. 1994); 79 Fed. Reg. 74386 & n.364, 74389-91 & n.386, 74413 (discussing cases and rejecting claims that this settled practice deprives employees' of ability to make an informed choice in election, deprives employers of ability to campaign against union, or deters voting). Accordingly, by codifying RD discretion to defer deciding such matters

---

[17] *See id.* at 74309 (Am. 11); 74402-03, 74426.

[18] *See also id.* at 74398 (amended § 102.66(c) makes clear that "it is the regional director, not the hearing officer, who will determine the issues to be litigated and whether evidence described in an offer of proof will be admitted"); 74426 n.526 (rejecting claim, advanced by ABC (MSJ 16) that codification of hearing officer's pre-existing authority to request offers of proof violates the prohibition against allowing hearing officers to "make recommendations").

[19] *See id.* at 74309 (Am.5, 7); Amended §§ 102.63(a)(1), (b), *id.* at 74480-81, 74371-73.

[20] *See Croft Metals, Inc.*, 337 NLRB 688, 688 (2002) (requiring "5 working days' notice").

until after the election, the Rule "involves no qualitative changes regarding the issues to be decided before the election." *Id.* at 74426; *see also id.* at 74425.[21]

However, even though prior to the Rule, the Board was not required to decide all eligibility or inclusion questions before the election, the Board interpreted its former rules and statement of procedures as *entitling* parties to present evidence regarding those matters at the pre-election hearing. 79 Fed. Reg. 74383-86 (discussing *Barre-National, Inc.*, 316 NLRB 877, 878 & n.9 (1995)). This made little sense. If a matter will not be decided in the direction of election, there is no reason to permit evidence to be introduced on the matter. "This is the very definition of irrelevant and unnecessary litigation." 79 Fed. Reg. 74426. Thus, the Rule's amendments grant RDs discretion to bar litigation of such matters at the pre-election hearing, overruling *Barre* and its progeny. *Id.* at 74386, 74426.[22]

Now, if an eligibility decision is to be deferred, the RD may direct the hearing officer to decline to take evidence on that question. Instead, through the use of the Board's challenged ballot procedure, that issue may be reserved for a post-election proceeding, if necessary. *See id.* at 74391 (citing *Bituma*, 23 F.3d at 1436 ("The NLRB's practice of deferring the eligibility decision saves agency resources for those cases in which eligibility actually becomes an issue.")). But if the director chooses to consider eligibility prior to the election, the director will instruct the hearing officer to permit litigation of that issue. *Id.* at 74388.

---

[21] Accordingly, Amicus National Right to Work's (NRTW) arguments concerning what should be decided before an election are properly understood not as a challenge to the instant rulemaking, but instead as an attack on the pre-rulemaking practice of the Board. Indeed, NRTW's suggestion—that decisional deferrals of inclusion issues are brand new—additionally ignores parties' practice of bringing inclusion issues to the Board post-election via the unit clarification procedure (if they were unable to resolve them at the bargaining table) predates, and remains unchanged by, the Rule. *See id.* at 74391, 74393 & n.398, 74413. Thus, NRTW is also wrong when it asserts (at 2) that under the Rule, the Board "will never decide" whether a challenged classification of employees should be included in the unit.

[22] *See id.* at 74309 (Am.10); 74383-91. Because the Rule maintains RD discretion to decide individual eligibility or inclusion issues, NRTW errs (at 18 n.8) in predicating its facial challenge on the claim that the Rule precludes RDs from deciding such issues.

The Rule's practical approach promotes Section 9's sound administration. The Board reasonably concluded that permitting parties to litigate matters irrelevant to the pre-election hearing's statutory purpose frustrates the statutory goal of expeditiously resolving questions of representation; imposes unnecessary costs on the parties and the NLRB; and allows parties to use the threat of unnecessary litigation to extract concessions concerning election details, as well as the definition of the unit itself *See id.* at 74383-91.

ABC argues (MSJ 11-12) that the Board does not have authority to preclude parties at a pre-election hearing from litigating the eligibility of specific employees or groups of employees to vote in the election. But it points to nothing in the statute giving parties the right to litigate such matters at the pre-election hearing. The amendments' effect is simply to permit exclusion of evidence irrelevant to the statutory purpose of the pre-election hearing.[23]

Unable to point to anything in Section 9 supporting its view, ABC seeks support in the statute's legislative history. ABC claims (MSJ 14) that the Taft-Hartley amendments to the Act "greatly expanded the rights of employers to challenge union petitions in pre-election hearings," and points (MSJ 12) to Senator Taft's remarks entered into the Congressional Record following a vote on the Act that representation hearings should determine whether an election may properly be held, and if so, decide questions of the unit and eligibility to vote.

But Taft-Hartley's amendment of Section 9 in 1947 did not change the content of "an appropriate hearing," except to specify it should precede the election. As Judge Friendly explained, "[a]lthough under the [Taft-Hartley] amendment the hearing must invariably precede the election,

---

[23] Disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit are ordinarily not relevant to the existence of a question of representation. For example, if a petition seeks a unit of all registered nurses at a hospital, excluding supervisors, and the employer concedes that the unit is appropriate under the Board's rules, *see* 29 CFR § 103.30(a)(1), then whether RN Smith is a supervisor or whether RN Smith's particular occupational classification is included in the unit need not be determined before the election. Instead RN Smith may vote under challenge, and have her status resolved after the election, if necessary. *See also* 79 Fed. Reg. 74384 (explaining individual eligibility and inclusion issues); *id.* at 74386.

neither the language of the statute nor the committee reports indicated that any change in its nature was intended." *Utica Mutual Ins. Co. v. Vincent*, 375 F.2d 129, 133-34 (2d Cir. 1967) (noting *Inland Empire's* continued vitality).[24] And the *Inland Empire* Court expressly held that the whole point of the term "an appropriate hearing" in the 1935 Act is to "confer[] broad discretion upon the Board as to the hearing [required]." 325 U.S. at 708.

Moreover, the Supreme Court had upheld—in 1946, the year before the Taft-Hartley amendments were enacted, and before Senator Taft's statement was made—the Board's challenged ballot procedure. *See A.J. Tower Co.,* 329 U.S. at 330–35. And the Board had deferred deciding individual eligibility or inclusion questions since the early days of the Act. *See, e.g., Humble Oil & Ref. Co.*, 53 NLRB 116, 126 (1943). In 1947, Congress did not alter the pre-existing term "appropriate hearing" to take discretion away from the Board. Nor did it amend the Act to eliminate challenged ballots, and require all voter-eligibility questions to be decided before the election. 79 Fed. Reg. 74386, 74425-26. Thus, an individual legislator's statement about the meaning of a term his legislation did not change, cannot be used to compel the Board to permit litigation of issues that the Board need not decide pre-election. *See id.* at 74386 n.363.

### c. ABC fails to show that the Rule's deferral of litigation that may be mooted is arbitrary or capricious.

In the Board's experience, "many pre-election disputes are either rendered moot by the election results or can be resolved by the parties after the election and without litigation once the strategic considerations related to the impending elections are removed from consideration." 79 Fed. Reg. 74408. ABC objects to amendments' avoiding the resolution of eligibility issues prior to the election that are reasonably reserved for decision after the election (assuming they are not mooted)

---

[24] *See Lorillard v. Pons*, 434 U.S. 575, 582 (1978) (selectively amending only parts of a statute strengthens the presumption for those parts that are not changed); *Firstar Bank, NA v. Faul*, 253 F.3d 982, 988 (7th Cir. 2001) ("If a phrase or section of a law is clarified through judicial construction, and the law is amended but retains that same phrase or section, then Congress presumably intended for the language in the new law to have the same meaning as the old.").

on the ground that those amendments will increase Board and court of appeals litigation over the validity of the election, and therefore increase the overall time required to certify union representatives. (MSJ 24). But ABC has pointed to no evidence indicating that so deferring these issues will make the entire process slower. There is no reason for parties to file more petitions for review in the circuit courts of appeals than they did under the prior rules. *Id.* at 74427.[25]

### 3. The Rule is consistent with applicable free speech protections because employers will continue to have a meaningful opportunity to campaign.

The Board carefully considered and properly rejected the claim that the amendments violate the statutory and constitutional free speech rights of employers. *Id.* at 74318-23. It explained that "the amendments honor free speech rights; they do not in any manner alter existing regulation of parties' campaign conduct or restrict freedom of speech." *Id.* at 74317. Recognizing this, the Rule's opponents instead suggested that its elimination of unnecessary delay coupled with the absence of a rigid timeline for holding elections "would leave employers with too little time to effectively inform their employees about the choice whether to be represented by a union." *Id.* at 74319.

The Board acknowledged that both the Act and the First Amendment guarantee "that all parties to a representation proceeding will have a meaningful opportunity" to engage in campaign speech. *Id.* at 74320; *see id.* at 74319 (citing First Amendment cases holding that speakers' rights include the "opportunity to win the[] attention" of willing listeners). But the Board determined that the Rule suffered no speech-related infirmity because employers will continue to have "ample meaningful opportunities" for speech after it takes effect. *Id.* at 74319.

The Board gave three principal reasons for this conclusion. First, as recognized long ago by the Supreme Court, union organizing campaigns rarely catch employers by surprise. *Id.* at 74320 (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 603 (1969)). Consequently, many employers begin

---

[25] Between FY 2008 and FY 2013, the number of test of certification cases filed each year in the U.S. Circuit Courts of Appeals ranged from eight to eighteen. *Id.* at 74344 n.176.

to engage in campaign speech well before a representation petition is filed. Second, "employers in nonunionized workplaces may and often do communicate their general views about unionization to both new hires and existing employees" through materials like handbooks and orientation videos. *Id.* at 74321. Third, "and most significantly," *id.* at 74320, the Board examined employers' ability to rapidly disseminate their campaign message after a petition is filed. *Id.* at 74322-23. For example, employers may repeatedly "compel [employee] attendance at meetings at which employees are often expressly urged to vote against representation." *Id.* at 74323. For these reasons, the Board concluded that employers will continue to have significant meaningful opportunities for election speech.[26]

ABC nonetheless claims that the Rule will impermissibly "curtail[]" the opportunity for campaign speech guaranteed by the Act. (MSJ 22). But even if the Rule generally results in more expeditious elections, ABC fails to dispute *any* of the reasons the Board gave for its conclusion that employers would continue to have "ample meaningful opportunities" for election-related speech. *Id.* at 74319. Instead, ABC contends that the "cumulative impact" of the amendments will not leave "enough time" for parties to campaign "between the filing of a representation petition and the date of the election." (MSJ 21-22). Aside from the fact that ABC fails to satisfy its facial challenge burden to show that this will necessarily be the case in every set of circumstances, this argument ignores the Rule's explicit instruction that the "the regional director will set the election for the earliest date practicable," 79 Fed. Reg. 74310, after taking into account case-by-case variables such as the "size, geography and complexity," of the election, *id.* at 74323, as well as "other relevant factors," *id.* at 74324, including "the desires of the parties, which may include their opportunity for meaningful

---

[26] The Board also relied on three additional factors. First, most Board elections take place in small bargaining units, in which "effective communication with all voters can be accomplished in a short period of time." *Id.* at 74322. Second, under the Board's longstanding *Excelsior* rule, union petitioners receive a list of voters' names and addresses "a minimum of 10 days before the election, effectively allowing the [union] petitioner a minimum of 10 days" to expose voters to nonemployer campaign speech. *Id.* at 74323. "That analysis remains relevant in considering employers' opportunity to campaign." *Id.* at 74423 n.514. And third, "advances in . . . technology" have made information transmission more effective and efficient. *Id.* at 74423.

speech about the election," *id.* at 74318. *See also* CHM § 11302.1 (cited in 79 Fed. Reg. 74318 n.39) (setting forth other relevant factors). And if an employer contends that it did not have an adequate opportunity to campaign in a particular case, that issue may be raised and preserved for later review.

Finally, there is no merit to ABC's claim that the Act establishes an across-the-board minimum permissible campaign period. The statute itself says nothing on this subject, so ABC has instead turned to a snippet of unenacted legislative history from the 1959 amendments to the Act. In that legislative history excerpt, then-Senator John F. Kennedy supported a failed amendment that would have allowed the Board to reinstate the "pre-hearing election" procedure that ABC decries (MSJ 13), as long as the election occurred at least "30 days after the petition was filed." 79 Fed. Reg. 74326. But, to state the obvious, a lone senator's unenacted views in support of a failed legislative proposal are not the law and may not be imputed to Congress as a whole. Nor, as the Board found, do Senator Kennedy's views bear on the meaning of the NLRA as originally adopted in 1935 or as subsequently amended in 1947. *Id.* (collecting cases).

### 4.   The amendments fully implement Section 3(b) of the Act.

Section 3(b) of the Act expressly authorizes the Board to delegate to its RDs the power to process representation case petitions through certification, subject to certiorari-type review by the Board. 29 U.S.C. § 153(b). This delegation was "designed to expedite final disposition of cases by the Board, by turning over part of its caseload to its regional directors for final determination." *See Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 141 (1971) (internal quotation omitted).

The amendments fully implement Section 3(b)'s grant of authority and build upon the Board's experience in administering its discretionary review provisions to take better advantage of the efficiencies permitted by the statute. For pre-election proceedings, the Board eliminated its previous requirement that parties request review of the RD's decision and direction of election prior to the election—or be deemed to have waived their right to do so. That prior requirement—found

nowhere in the Act—forced parties to unnecessarily litigate matters that could be mooted by election results. Am. 13, *id.* at 74309, 74408. For post-election proceedings the Board made certiorari-type review the normal method to secure Board review.[27]

In addition, the amendments carry out Section 3(b)'s instruction that Board "review shall not . . . operate as a stay" of any RD action unless "specifically ordered" by the Board. The amendments eliminate the prior practice of automatically delaying elections for 25-30 days after issuance of the RD's direction of election, eliminate ballot impoundment (a form of "stay") in cases where a request for review is pending or granted by the election, and provide a procedure for parties to request stays of elections and or impoundment of ballots.[28] These changes are fully consistent with Section 3(b).

### 5. The Rule's voter list provisions are consistent with the NLRA and strike a reasonable balance between privacy and furthering the goals of the Act.

The Rule provides that within two business days of an RD's approval of an election agreement or direction of election, employers must electronically transmit to the other parties (e.g., a petitioning union) and the RD a list of eligible voters, their home addresses, work locations, shifts, job classifications and, if available to the employer, their personal e-mail addresses and home and cellular telephone numbers. 79 Fed. Reg. 74310 (Am. 20). Previously, employers had seven days to transmit a list of eligible voters' names and home addresses to the RD, who would then serve the list on the parties. *See Excelsior Underwear, Inc.*, 156 NLRB 1236, 1239-40 (1966); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 767 (1969) (upholding *Excelsior* requirement). Contrary to ABC's claim (MSJ 17), the disclosure provisions violate neither the Act nor employees' privacy rights.

---

[27] See 79 Fed. Reg. at 74310 (Am. 24), 74331-32, 74413.

[28] *See id.* at 74309-10 (Ams. 14 & 15), 74409-10 (it made little sense to apply the 25-day waiting period—which, by definition, delays resolution of the question of representation—to all directed-election cases because requests for review were filed just in a small percentage of cases, granted even less, and even if the Board had not yet ruled on the request by the time of the election, the election went ahead anyway). Contrary to ABC's claim (MSJ 16), eliminating the automatic 25-day stay in no way precludes parties from continuing to file pre-election review petitions with the Board if they so choose.

21

### a.   Expanding the voter list requirements is consistent with the Act.

In *Excelsior*, 156 NLRB at 1240 (footnote omitted), the Board determined:

Among the factors that undoubtedly tend to impede such a choice is a lack of information with respect to one of the choices available. In other words, an employee who has had an effective opportunity to hear the arguments concerning representation is in a better position to make a more fully informed and reasonable choice. . . .[29]

The Rule's expanded voter list provisions align *Excelsior*'s primary purpose of exposing employees to different viewpoints with modern modes of communication. 79 Fed. Reg. 74337. Under the Rule, nonemployer parties can take advantage of changes in technology since *Excelsior* was decided in 1966 (such as cell phones and answering machines) by calling employees and communicating a message about a union campaign, rather than trying to schedule a face-to-face meeting at their homes, or more intrusively, showing up unannounced. *Id.* at 74338-39.

Similarly, by requiring disclosure of personal email addresses, the Board is carrying out its "responsibility to adapt the Act to changing patterns of industrial life." *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 266 (1975); 79 Fed. Reg. 74337. Email transmission is virtually immediate, and it facilitates group discussions as well as personal appeals, thus making it more likely that employees can make an informed choice in the election. *Id.* at 74338. Accordingly, ABC's assertion that the Board inadequately explained these changes (MSJ 20) has no merit.

### b.   Expanded voter list disclosure provisions strike a reasonable balance between privacy and furthering the goals of the Act.

The Rule safeguards employee privacy by restricting dissemination and use of the voter information only for "a representation proceeding, Board proceedings arising from it, and related matters." *Id.* at 74344. The list will not be made publicly available, nor will it be required in every representation case, but is required only upon satisfaction of the Board's "showing of interest"

---

[29] The Board additionally reasoned that disclosure of names and addresses will facilitate the public interest in the expeditious resolution of questions of representation by enabling parties on the ballot to avoid having to challenge voters based solely on lack of knowledge as to the voter's identity. *Excelsior*, 156 NLRB at 1242-43.

requirement, and after an election agreement is approved or an election is directed. *Id.* at 74421.[30]

And the Board left no "gaping hole" regarding restrictions on use of the information, as it detailed

permissible uses (NRTW 22),[31] and explicitly cautioned that the information not be used to "harass"

employees, sold to telemarketers, or used for political campaigns. *Id.* at 74358.

The Rule also seeks to deter misuse of voter contact information. The Board noted in

*Excelsior*, 156 NLRB at 1244, that it had reserved the right to provide remedies if voter contact

information was misused. But "the rulemaking record shows not a single instance of voter list

misuse dating back to the 1960s." 79 Fed. Reg. 74428. Based on that record, the Board chose to take

this same approach, noting that it will provide an "appropriate remedy" for any such misuse, leaving

the question of precise remedies "to case-by-case adjudication." *Id.* at 74360, 74359.[32] Although

ABC and NRTW criticize that choice (MSJ 20; NRTW 22), this approach is reasonable, given the

nearly 50-year absence of evidence of voter list misuse. *Id.* at 74427-28.

ABC argues that the Rule fails to accommodate other federal laws protecting privacy (MSJ

19-20). The Board recognized and honored those obligations, but simply struck a different balance

than the one urged by ABC.[33] As to other federal statutes that protect privacy, it remains undecided

whether those laws apply to the required disclosures, and thus the Rule cautions nonemployer

---

[30] Citing amended 102.62(d), which addresses the voter list, ABC complains that an employer must disclose employee names and job duties to a petitioning union "prior to any determination that the petition is supported by a sufficient showing of interest" in an appropriate unit. (MSJ 17). The short answer is that the voter list (including a list of employee names and job classifications) is not due until after the parties have entered into an election agreement defining the appropriate unit or the RD has directed an election in an appropriate unit following a hearing. *Id.* at 74480, 74486.

[31] The examples include investigating eligibility, preparing for post-election hearings and unit clarification or unfair labor practice proceedings arising from the election, as well as for a potential rerun election. 79 Fed. Reg. 74358.

[32] *See also* 79 Fed. Reg. 74359 n.259 (noting Board may discipline representative for misconduct under 29 C.F.R. § 102.177).

[33] Additionally, the Board has long protected *Excelsior* information from third-party disclosure under the FOIA. *Reed v. NLRB*, 927 F.2d 1249, 1251-52 (D.C. Cir. 1991). And ABC's fleeting reference to the Privacy Act (MSJ 19), does not change the fact that it is not implicated. 79 Fed. Reg. 74346.

parties to comply with any applicable statutes. *Id.* at 74352.[34] Additionally, to the extent ABC cites the risk of identity theft and data breaches (MSJ 20), the Rule notes that other federal employment laws already require small entities to maintain employee records, *id.* at 74464, and that the continuing expansion in the use of new electronic media demonstrates that the risks associated with cell phones and email are part of our daily life, *id.* at 74342. Thus, the balance struck by the Rule is reasonable.

Finally, the Board's exclusion of opt-out or unsubscribe provisions does not render the Rule invalid (MSJ at 19; NRTW 21), because it considered and reasonably rejected such proposals.[35] *Excelsior* highly valued unsolicited communication from nonemployer parties during the campaign in order to ensure "employees are able to hear all parties' views concerning an organizing campaign— even views to which they may not be predisposed at the campaign's inception." *Id.* at 74346 (citing *Excelsior*, 156 NLRB at 1244). For this reason, the Board reasonably rejected such proposals as inconsistent with the goals of *Excelsior* and the Act.[36]

---

[34] There is no evidence that *Excelsior* caused employees to withhold personal contact information from their employers, and there is no reason to expect such behavior as a result of the Rule. (MSJ 17). *See also* 79 Fed. Reg.74343 n.169 (amendments do not require employers to ask for personal information). As to ABC's argument that the Rule requires employers to breach promises of confidentiality, the Board noted that such potential already exists under *Excelsior*, and that pledges of confidentiality may provide for exceptions upon which employers may rely, such as when disclosure is legally required. *Id.* at 74349 (citing *Howard Univ.*, 290 NLRB 1006, 1007 (1988)).

[35] The Board also noted that such provisions would likely prove administratively burdensome, delay elections, and invite litigation. 79 Fed. Reg. 74347. As for an "unsubscribe" option in emails, the Board concluded that this union-administered approach would risk undermining employees' privacy interest in not having their sentiments regarding union representation revealed by their unsubscription. Thus, the Board concluded, "the existing self help remedy available to anyone who objects to unwanted communications—ignoring calls or letters and deleting emails—seems for the time being to be a more cost-effective option." *Id.* at 74348.

[36] NRTW complains (at 22-23) about providing personal information for employees who ultimately may not be in the unit, given the Rule's deferral of eligibility issues. Even under the former rules, however, employers were required to provide names and addresses of individuals who may vote subject to a later eligibility determination.

**IV. Even if All of ABC's Challenges Succeed, the Remainder of the Rule Is Severable.**

Invalidation of any of the 12 challenged provisions would not require the Court to invalidate any other portion of the Rule. [37] When part of a regulation is invalidated, the remainder may be severable "without otherwise disrupting the regulations' functions." *U.S. v. Rainbow Family*, 695 F. Supp. 294, 312 (E.D. Tex. 1988). Thus, "[w]hether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broadcasters Ass'n v. FCC,* 236 F.3d 13, 22 (D.C. Cir. 2001).

Here, the Board sought to "provide targeted solutions to discrete, specifically identified problems" in each of the Rule's 25 amendments. 79 Fed. Reg. 74308. It explained, "[i]n accordance with the discrete character of the matters addressed by each of the amendments listed . . . it would adopt each of these amendments individually, or in any combination, regardless of whether any of the other amendments were made." *Id.* 74308 n 6.[38] Thus, because the Rule's various parts are justified by different rationales and perform various functions, it logically follows that one mechanism could be severed without impairing the others.[39] Accordingly, even if ABC succeeds in *all* of its challenges, the remaining Rule provisions should go into effect.

**V. Conclusion**

For the foregoing reasons, this Court should dismiss ABC's statutory and constitutional claims as to amendments 5, 7-11, 15, and 17, grant summary judgment in favor of the Board, and deny ABC's motion for summary judgment.

---

[37] Although ABC broadly asserts that the entire rule must be vacated (Compl. at p.13; MSJ at p. 2), it has not made any allegations with respect to amendments Nos. 1-4, 6, 12, 16, 18-19, and 22-25.

[38] *See also id.* at 74368 n.292; 74371 n.303; 74373 n.319; 74410 n.457; and 74414 n.469 (specifiying that certain provisions should remain in effect even if others are struck).

[39] *Davis Cnty. Solid Waste Mgmt v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (where EPA standards operated "entirely independently of one another" the provision was found severable).

Respectfully submitted,

NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel*

DAWN L. GOLDSTEIN
KEVIN P. FLANAGAN
*Supervisory Attorneys*

PAUL A. THOMAS
MARISSA A. WAGNER
DAVID H. MORI
MICHAEL ELLEMENT
KEVIN J. HOBSON
IGOR VOLYNETS
*Attorneys*

Dated:  March 9, 2015
        Washington, D.C.

s/Barbara A. O'Neill
BARBARA A. O'NEILL
*Assistant General Counsel for Contempt,*
    *Compliance, and Special Litigation*
Phone: (202) 273-2958
Fax: (202) 273-4244
E-mail: barbara.oneill@nlrb.gov

National Labor Relations Board
1099 14th Street, NW, Suite 10700
Washington, D.C. 20570

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2015, the foregoing was served on the following via electronic ECF filing:

Maurice Baskin
Littler Mendelson, P.C.
1150 17th St. N.W.
Washington, DC 20036

Mark Jodon
Travis Odom
Littler Mendelson, P.C.
1301 McKinney Street
Suite 1900
Houston, Texas 77010-3031

Jason E. Winford
David E. Watkins
JENKINS & WATKINS
2626 Cole Avenue, Suite 200
Dallas, Texas 75204-0817

Raymond J. LaJeunesse
John N. Raudabaugh
Glenn M. Taubman
*c/o* National Right to Work Legal Defense & Education Foundation, Inc.
8001 Braddock Rd., Suite 600
Springfield, Virginia 22160

                                        s/ Barbara A. O'Neill

27