**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

_____
                                                    )
ASSOCIATED BUILDERS AND CONTRACTORS               )
OF TEXAS, INC., et al                             )
                                                    )
      Plaintiffs,                             )          15-cv-00026-RP
v.                                                  )
                                                    )
NATIONAL LABOR RELATIONS BOARD,                   )
                                                    )
      Defendant.                              )
_____  )


**PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION AND
REPLY TO DEFENDANT'S OPPOSITION**


      Plaintiffs hereby oppose Defendant's Motion to Dismiss and/or For Summary Judgment, and Plaintiffs further reply to Defendant's Opposition to Plaintiffs' Motion for Expedited Summary Judgment (hereafter Defendant's consolidated filings will be referred to collectively as "Board Motion/Opposition (Mot./Opp. __)").

      At the outset, Plaintiffs wish to bring to the Court's attention the recent vote of both houses of Congress to disapprove the Board's new Rule under the Congressional Review Act, 5 U.S.C. § 801. Congress thereby reaffirmed its intent to preserve the balanced NLRB election process that was in place prior to the new Rule's issuance. *See* S.J. Res. 8, 114th Congress (2015), providing for congressional disapproval of the rule submitted by the NLRB relating to representation case procedures (passed Senate 53-46 on March 4, 2015; passed House 232-186 on March 19, 2015). Regardless of whether the President ultimately signs the Joint Resolution, Congress has made it clear that the Board's new Rule is contrary to legislative intent under the Act.

I.  **CONTRARY TO THE BOARD'S MOTION/OPPOSITION, ALL ASPECTS OF PLAINTIFFS' CHALLENGE ARE RIPE FOR REVIEW.**

The Defendant NLRB (hereafter "NLRB" or the "Board") contends in its Motion/Opposition that some of Plaintiffs' claims are not ripe for review – specifically, the challenges to Amendments 5, 7-11, 15, and 17, which the Board contends are immune from facial challenge because parts of these rules are "discretionary." (Board Mot./Opp. at 3).   The Board is mistaken.  In this Circuit, a challenge to administrative regulations is fit for review if the questions presented are "purely legal," the challenged regulations constitute "final agency action," and further factual development would not "significantly advance the court's ability to deal with the legal issues presented." *See State of Texas v. U.S. Department of Interior*, 497 F. 3d 491, 498 (5th Cir. 2007).  Plaintiffs' claims meet all of these criteria.

In addition, contrary to the Board's contention (Board Mot./Opp. at 4-5), Plaintiffs are not merely challenging individual discretionary acts of the Board; Plaintiffs are instead challenging the validity of the Board's radical changes to its pre-election and post-election processes as being contrary to the governing statute and the APA.  Just as in the *State of Texas* case, the Board is seeking to require Plaintiffs to "participate in an allegedly invalid process that eliminates procedural safeguard[s]." *Id*. at 499.  It is thus irrelevant that individual aspects of some of the specific provisions of the new Rule allow for some circumscribed exercise of discretion by the Regional Directors.  Plaintiffs are challenging the Board's new and unlawful changes to the pre-election process itself, an issue that is clearly ripe for review now.

As the Board acknowledges, if the new Rule is allowed to go into effect, individual employers will have little or no opportunity to obtain a judicial determination of its pernicious effects for many months and perhaps years. This is because the only avenue available to

2

employers to challenge any of the Rule's particular applications, once a petition is filed, will be to allow the entire election process to play out, including a futile appeal to the Board, followed by having to commit an unfair labor practice by refusing to bargain after a union is certified. (Board Mot./Opp. at 2, citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964)). Thus, here as in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967), employers will be faced with the dilemma of incurring substantial economic costs of participation in an election process that is invalid at its inception, with no avenue of appeal except through commission of a violation of law.

It is misleading for the Board to claim that committing an unfair labor practice in order to preserve a legal challenge to one of the Board's new rulings in an individual test of union certification is not an "onerous risk." (Board Mot./Opp. at 5). The Supreme Court considered and rejected a similar argument by the Board in *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 529 (2002). There the Court held that it was unreasonable for the Board to require employers to risk committing unfair labor practices in deciding whether to file lawsuits against union. The Court held that "the resulting finding of illegality is a burden by itself….[T]he [ULP] finding also poses the threat of reputational harm that is different and additional to any burden posed by other penalties…."). Moreover, the risks associated with committing an unfair labor practice have recently increased as a result of an Executive Order issued by the President last year, which declares that commission of an unfair labor practice (among other labor law violations) will be considered grounds for potential debarment from federal government contracts. *See* Executive Order No. 13673 (July 31, 2014).

While the Board's Opposition relies heavily on the potential exercise of discretion by Regional Directors in implementing the new Rule, one of the significant issues in this case is the

degree to which the Board's rulemaking *narrows* the Regional Directors' exercise of discretion. The Rule strongly discourages and in effect disallows extensions of the narrowed time periods for employer responses to union petitions; extensions that were previously routinely permitted under the old rules will now not be permitted except in "extraordinary circumstances." See Amendments 5, 6, 7, 11, 14, 15, 16, 17, and 20.

Conversely, the Rule codifies what have until now been rare exceptions with regard to deferral of hearing issues and evidence, and clearly dictates a new and unlawful standard for admitting pre-election hearing evidence. Amendments 9 and 10. Again, the Regional Directors will be required to adhere to these dramatic changes in the process surrounding union elections, except in extraordinary circumstances.  These fundamental shifts in the pre-election (and post-election) process are undeniably real, raising entirely justiciable legal questions as to whether the Board's dramatic changes violate Congressional intent and/or are arbitrary and capricious under settled law.    For each of these reasons, the Board's attempt to immunize the new Rule from a facial challenge should be rejected, and the Court should review and set aside the new Rule on its merits (or lack thereof).[1]

## II.    CONTRARY TO THE BOARD'S MOTION/OPPOSITION, THE NEW RULE EXCEEDS THE BOARD'S STATUTORY AUTHORITY.

Plaintiffs' Motion contends that the Board's new Rule departs from Section 9 of the Act, *inter alia*, by relying on the false premise that Congress intended pre-election hearings to achieve the limited purpose of determining whether a petitioned-for unit is appropriate for bargaining, as

---

[1] The facts of the cases relied on by the Board, *Reno v. Flores*, 507 U.S. 292, 301 (1993), and *Action Alliance of Senior Citizens of Greater Phila. V. Heckler*, 789 F.2d 931, 939 (D.C. Cir. 1986) bear no resemblance to the challenged Rule at issue here. In neither case did the court deal with an agency rulemaking that fundamentally changed the standards for the agency's exercise of discretion and in a manner that narrowly circumscribed previous discretionary standards, with no opportunity for meaningful review of such changes in the agency standards.

opposed to making a record of voter eligibility issues.  (Pls.' Mot. at 11).  In response, the Board continues to rely on the Supreme Court decision in *Inland Empire Dist. Council, Lumber & Sawmill Workers Union v. Millis*, 325 U.S. 697 (1945) for the definition of "appropriate" hearings (Board Mot./Opp. at 16-17), even though that case was superseded by the Taft-Hartley amendments and did not address the question presented here.  (Pls.' Mot. at 14).[2]

The Board's Motion/Opposition further argues that the statute says "nothing at all" about a requirement to resolve all disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit before an election. (Board Mot./Opp. at 14).  This argument is contrary to the Act's legislative history which clarifies what the statute says, as explained in Plaintiffs' Motion. (*Id*.). The Board's Motion/Opposition offers no reason to question the Taft-Hartley Act's legislative history, particularly Senator Taft's definitive statement that Congress intended to allow employers to raise voter eligibility issues in pre-election hearings. 93 Cong. Rec. 6858, 6860 (June 12, 1947).  It is well settled that the determination of statutory meaning under *Chevron* Step I requires the courts to use "all tools" of statutory construction, including legislative history.  *Carias v. Holder*, 697 F.3d 257 (5th Cir. 2012).   In this case, the Congressional intent announced by the chief sponsor of the Taft-Hartley Act, subsequently ratified by the Congressional vote to override the President's veto, clearly establishes that employers must be allowed to submit evidence on voter eligibility issues in the pre-election

---

[2] *Inland Empire* certainly did not address the question of which issues employers were entitled to present evidence about in pre-election hearings under Section 9(c)(1).  Nor could the Supreme Court have addressed such a question in 1945, since the statutory description of the purpose of such hearings, *i.e.,* to make a "record" as to the existence of any "question of representation," had not yet been written into law by Taft-Hartley, 61 Stat. 144 (1947). Nor did the subsequent case relied on by the Board, *Utica Mutual Ins. Co. v. Vincent*, 375 F.2d 129 (2d Cir. 1967), purport to decide what issues should be considered or addressed by the Board in pre-election hearings generally. That case only decided not to hear a constitutional challenge to 9(c)(1) itself, based on a "frivolous" attempt to require Regional Directors to be physically present to hear all witnesses.

hearing record, as the Board itself previously recognized in the *Barre National* case, 316 NLRB 877, 878 (1995).  The new Rule fundamentally contradicts Congress's intent by discouraging and effectively foreclosing the pre-election presentation of evidence on many voter eligibility issues.[3]

It should also be noted that the Board's Opposition creates a false distinction between "questions concerning representation" (which the Board concedes to be the subject of any hearing under the plain language of the Act) and "voter eligibility" questions (which the Board would largely exclude from such hearings).  In truth, voter eligibility questions can be and generally are every bit as much "questions concerning representation" as are questions about the appropriateness of a bargaining unit, as more fully explained in the NRTW Amicus Brief and in previously cited comments in the Administrative Record.  *See also Barre-National, Inc.*, *supra*.

Those aspects of the new Rule that purport to exclude or diminish the importance of voter eligibility issues, such as by deferring them to post-election consideration except in extraordinary circumstances, violate the intent of Congress as expressed in the Taft-Hartley Amendments to the Act. *See* Sections 102.64(a), 102.66(a), and 102.67(a), discussed at 79 Fed. Reg. at 74380-91. For each of the foregoing reasons, the provisions of the new Rule that would exclude evidence of voter eligibility questions from pre-election hearings are unlawful and must be vacated.

---

[3] As noted above, Congress has recently reaffirmed its intent to preserve the rights of employers under the previous NLRB election rules by voting in a joint resolution to disapprove the new Rule. S.J. Res. 8, 114th Congress (2015), providing for congressional disapproval of the rule submitted by the NLRB relating to representation case procedures (passed Senate 53-46 on March 4, 2015; passed House 232-186 on March 19, 2015).

III.     **CONTRARY TO THE BOARD'S MOTION/OPPOSITION, THE NEW RULE FAILS TO ASSURE TO EMPLOYEES THE FULLEST FREEDOM IN EXERCISING RIGHTS GUARANTEED BY THE ACT.**

Plaintiffs' Motion further contends that the Board's new Rule interferes with the privacy rights of employers and employees by compelling employers to disclose unprecedented confidential employee information to outsiders before any hearing has been held, as well as compelling disclosure of even more invasive information about employees immediately upon direction of an election. (Pls.' Mot. at 17-20).[4]   In response, the Board contends that the new Rule strikes a "reasonable balance" between privacy and the goals of the Act (Board Mot./Opp. at 22).  To the contrary, there is nothing reasonable about the unprecedented intrusions into employees' personal data compelled by the new Rule.

The Board claims it has left no "gaping hole" in its restrictions on the use of the compelled information disclosures (*Id*. at 23); but the Board has in fact taken <u>no steps</u> to protect employers or employees against unwarranted union misuse of the newly compelled information disclosures. Indeed, the new Rule contains not a single deterrent to prevent union abuse of the personal and private information that will have to be disclosed to labor organizations under the new Rule.  The Board relies instead on the absence of (reported) abuse of previous disclosures of employee home addresses under *Excelsior Underwear*, 156 NLRB 1236 (1966). *Id*.[5]  By

---

[4] Plaintiffs' Motion inadvertently referred to Section 102.62(d) with regard to the newly required pre-hearing disclosure of employee names and job duties. (Pls.' Mot. at 17). The correct citation should have been to Section 102.63(b), also referred to by the Board as Amendment 7.  Section 102.62 deals with the post-hearing disclosure of employee addresses, personal phone numbers and email addresses.  Plaintiffs are challenging both provisions of the new Rule.

[5] The Board's claim that union access to home addresses has not been abused is also incorrect.  In fact, there have been many cases over the years in which employees have complained about union abuse of home visitations.  The Board has usually ignored such employee complaints; but that does not justify the Board's statement in this proceeding that no union abuse of access to employee home addresses has been reported. *See, e.g., Goffstown Truck Center, Inc.*, 356 NLRB No. 33 (2010).

definition, such disclosures did not previously include personal emails or phone numbers and predated the relatively recent but drastic developments in the field of spam and identity theft.

At the same time, Plaintiffs' Motion (Pls.' Mot. at 20) and numerous comments in the Administrative Record have highlighted specific recent abuses by unions of electronic communications. *See, e.g., Pulte Homes, Inc. v. LIUNA Construction*, 648 F.3d 295 (6th Cir. 2011). The Board has turned a blind eye to these bad acts, claiming that there is no cause for concern about very real threats to privacy rights under the new Rule. Contrary to the Board's Motion/Opposition, the new Rule utterly fails to harmonize the Board's new pre-election requirements with the strong privacy interests evident in other federal laws. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 251 (1970) and other cases and comments cited in Plaintiffs' Motion, at 18-19. The unnecessary and intrusive disclosure requirements of the new Rule should certainly be set aside.

Plaintffs' Motion further demonstrated that the two-day time frame for creating and disclosing the voter eligibility list is impracticable for many small business employers, citing numerous comments in the Administrative Record. (Pls.' Mot. at 18-19). In response, the Board's Motion/Opposition (at 10-11) cites no record evidence in support of the Board's claim that the absurdly shortened time frame can be met by employers, particularly not by those small businesses who do not have sophisticated payroll systems. Nor is there any record evidence supporting the Board's claim that employers in the construction industry can meet the same shortened time period as non-construction employers, in light of the fact that construction employers alone are required to laboriously calculate the number of laid off employees who have

worked in the bargaining unit for specified numbers of days over the previous two years, under the Board's formula in *Steiny & Co., Inc.*, 308 NLRB 1323 (1992).[6]

As noted above, the new Rule also requires employers to disclose employee names and job duties <u>prior</u> to any pre-election hearing, albeit without home addresses, phone numbers or emails. Section 102.63(b). The Board's Motion/Opposition offers no adequate justification for requiring employers to provide such pre-hearing discovery to petitioning unions at a time when the unions' petitions have not yet been determined to meet the Board's criteria for a direction of election.  The new Rule fails to acknowledge the very real prospect that unions can easily "game" the new system by filing a deficient petition merely to obtain the valuable list of employee names and work shifts, to which they otherwise have no entitlement.  Upon receiving this information, the union can then withdraw its petition prior to any hearing being held. No justification exists for allowing such gamesmanship to occur under the new Rule, and this provision should also be set aside.

### IV.   CONTRARY TO THE BOARD'S MOTION/OPPOSITION, THE CUMULATIVE IMPACT OF THE NEW RULE'S AMENDMENTS INTERFERES WITH EMPLOYER RIGHTS OF DUE PROCESS AND PROTECTED SPEECH.

Plaintiffs' Motion further contends that the cumulative impact of the new Rule, beyond the several individual violations of the Act described above, shortens the overall time period

---

[6] The Board's Motion/Opposition repeats the new Rule's assertion that employers will be on notice that they should start compiling their post-hearing voter eligibility lists even before the hearing is held and before the bargaining unit is determined.  Such an activity would be a waste of time for many employers, because the bargaining unit will not be known until after the hearing is held.  For construction employers, the Board's proposed "advance preparation" option is simply not available, because the two-year historical calculations under *Steiny* cannot be performed until after the employer receives the direction of election from the Regional Director. Nor can such employers rely on the Board's statement that the due date for their lists can be extended by the Regional Director for extraordinary circumstances, in the absence of any guidance from the Board as to what such extraordinary circumstances are and how (or when) they must be shown.

between union petitions and elections to a degree that is inconsistent with Congressional intent. (Pls.' Mot. at 20-22).  In response, the Board's Motion/Opposition ignores the repeated Congressional statements rejecting "quickie" elections, focusing on only one such statement by Senator Kennedy.[7]  The Board further argues that expressions of intent by the 1959 Congress do not bear on the meaning of the NLRA as originally enacted or amended.  (Board Mot./Opp. at 20).

Contrary to the Board's argument, the Supreme Court has repeatedly held that Congressional re-enactment of a statute without pertinent change to an agency's longstanding interpretation of it is "persuasive evidence that the interpretation is the one intended by Congress." *NLRB v. Bell Aerospace v. NLRB*, 416 U.S. at 274-75; *see also Sebelius v. Auburn Regional Med. Ctr.,* 133 S. Ct. 817, 827 (2013); *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833 (1986).  Here, Congress re-enacted the NLRA at a time when the Board's rules interpreted the Act as requiring substantially more than 30 days between a petition and an election, absent waiver by the parties.  Congress reaffirmed that principle in choosing how to amend the Act, with multiple sponsors of the LMRDA amendments declaring their intent not to allow "quickie" elections.  Under the Supreme Court's holdings, these expressions of legislative intent are "persuasive" evidence that the previous NLRB election procedures, not the new Rule, were intended by Congress to remain in effect.[8]

---

[7] The Board's Motion/Opposition specifically ignores the repeated statements by House Committee Chairman Barden that "some were disturbed over [quickie elections] and the possibility of that is out." (Pls.' Mot. at 20-21), citing *inter alia* 105 Cong. Rec. 16,629 (1959), reprinted in 2 LMRDA Hist. 1714.

[8] As noted above, Congress has quite recently reaffirmed its intent  to preserve the balanced election process that was in place prior to the new Rule by voting with substantial majorities in both houses to disapprove the new NLRB rule under the Congressional Review Act, 5 U.S.C. 801.  *See* S.J. Res. 8, 114th Congress (2015), providing for congressional disapproval of the rule submitted by the NLRB relating to representation case procedures (passed Senate 53-46 on March 4, 2015; passed House 232-186 on March 19, 2015).

Plaintiffs' Motion further contends, based on numerous Administrative Record comments, that the unreasonably expedited election process will impermissibly curtail campaign speech in violation of Section 8(c) of the Act (Pls.' Mot. at 22). In response, the Board's Motion/Opposition claims without support that employers will continue to have "ample meaningful opportunities for election-related speech." (Board Mot./Opp. at 19, citing 79 Fed. Reg. at 74319). The portion of the rulemaking cited by the Board fails to justify this claim. In particular, the Board's claim that "high" percentages of employers know about union organizing prior to the filing of a petition and can therefore begin campaigning against such organizing in advance of the petition being filed is contrary to the Administrative Record.

As explained in comments filed by the US Chamber and many others during the rulemaking, the Board relied on a biased sample of studies of alleged pre-petition employer misconduct and AFL-CIO surveys of union lawyers to justify the claim that most employers learn about union organizing prior to the filing of a petition. *See* 79 Fed. Reg. at 74321, n. 56 and 57. The Board's own statistics nevertheless showed that substantial percentages of employers do <u>not</u> become aware of union organizing until after a petition is filed. *Id*. The Board ultimately accepted that "at least some" employers may, in fact, be unaware of an organizing campaign until a petition is filed." *Id*. at 74322. The Board then proceeded to ignore the collective experience reported by organizations representing millions of employers, indicating that 15-20 days of educating employees on the complex issues surrounding union representation is inadequate in the substantial majority of elections. *Id*. at 74322-23. The net result of the Board's new Rule remains as described in Plaintiffs' Motion: The Rule is clearly prejudicial to protected rights of free speech under the Act.

11

## V.   CONTRARY TO THE BOARD'S MOTION/OPPOSITION, THE BOARD HAS OFFERED NO ADEQUATE JUSTIFICATION FOR REVERSING DECADES OF POLICY AND PRECEDENT IN THE NEW RULE.

Plaintiffs' Motion finally contends that the new Rule is arbitrary and capricious in violation of the APA because it reverses decades of policy and precedent without adequate justification. (Pls.' Mot. at 22, citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) and *FCC v. FoxTV Stations, Inc.*, 556 U.S. 502 (2009)).[9] The Board's Motion/Opposition offers only a cursory defense to this aspect of Plaintiffs' Motion, declaring that the Board has "reasonably determined that incremental improvements will further the statute's purposes." (Board Mot./Opp. at 9). To the contrary, for the reasons outlined in Plaintiffs' Motion, the new Rule is neither "reasonable," "incremental," nor in "further[ance] of the statute's purposes." In particular, the Board ignores the criteria for finding agency action to be arbitrary under the Supreme Court's standards, which the new Rule demonstrably fails to meet.

Thus, the new Rule is premised throughout on factors which Congress clearly did not intend the Board to consider. (Pls.' Mot. at 23). Such impermissible factors include the Board's "relentless zeal for slashing time from every stage of current pre-election procedure" (dissenting opinion); as well as the Board's mistaken view that Congress did not intend to allow parties to litigate voter eligibility issues; and the Board's failure to harmonize its new Rule with

---

[9] *See also Perez v. Mortgage Bankers Ass'n*, __ U.S. __, 2015 U.S. LEXIS 1740, *21-22 (March 9, 2015) ("As we held in *Fox*, and underscore again today, the APA requires an agency to provide more substantial justification when "its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account."). Contrary to the Board's Motion/Opposition, the comments in the Administrative Record cited in Plaintiffs' Motion identify numerous instances in which the factual findings relied on by the Board in the new Rule contradict those which underlay its prior policy. These include findings as to the current timing of elections, the causes of delays in the election process, the length of time needed by employers to respond to union petitions and to communicate with employees about them; the lack of need to provide intrusive personal employee data to outside unions, and many more. See previously identified comments of ABC, NFIB, CDW, US Chamber, IFA, and other organizations.

Congress's demonstrated intent to increase employee privacy protections. *Id*.  Equally arbitrary was the Board's failure to address important aspects of the alleged problem (the "blocking" charge delays) or to consider the likelihood that the new Rule will increase the amount of post-election litigation which will add uncertainty and delay to the election certification process. *Id*. In sum, the Board has ultimately failed to explain why procedures that were working well to achieve the statutory objective of balanced and fair union elections should be so radically overhauled without regard to the adverse consequences that are now likely to impact many employers and their employees.

**CONCLUSION**

For each of the reasons set forth above and in Plaintiffs' Motion, the challenged provisions of the new Rule should be set aside.[10]

Respectfully submitted,

*/s/ Maurice Baskin*
Maurice Baskin (*pro hac vice*)
Mark Jodon (Bar No. 10669400)
Travis Odom (Bar No. 24056063)
Littler Mendelson, P.C.
1301 McKinney Street
Suite 1900
Houston, TX 77010-3031
Ph: 713.951.9400
Fax: 713.951.9212
mbaskin@littler.com
mjodon@littler.com
todom@littler.com
Attorneys for Plaintiffs

---

[10] Contrary to the Board's Motion/Opposition (at 25), it is premature to determine whether the offending portions of the new Rule are severable from the remainder of the regulation.  As described above and in Plaintiffs Motion, many of the challenged provisions of the Rule are interdependent with other sections and may not function sensibly without the stricken provisions.  *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (rejecting agency's severability claim).

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2015, the foregoing motion and attachments in support

thereof are being served on the following via electronic ECF filing:

> Barbara A. O'Neill
> Dawn Goldstein
> Kevin Flanagan
> Office of the General Counsel
> National Labor Relations Board
> barbara.oneill@nlrb.gov
> dawn.goldstein@nlrb.gov
> kevin.flanagan@nlrb.gov
>
> Jason E. Winford
> David E. Watkins
> Jenkins & Watkins
> 2626 Cole Avenue Suite 200
> Dallas, TX 75204-0817
>
> Raymond J. LaJeunesse
> John N. Raudabaugh
> Glenn M. Taubman
> c/o National Right to Work Legal Defense & Education Foundation, Inc.
> 8001 Braddock Rd., Suite 600
> Springfield, VA 22160

> _/s/Maurice Baskin_