UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAKER DC, LLC, *et al.*, ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 15-0571 (ABJ) |
| NATIONAL LABOR ) RELATIONS BOARD, ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Baker DC, LLC ("Baker") and three of its employees, Shannon W. Cotton, Michael A. Murphy, and Jorge E. Gonzalez Villareal ("the employee plaintiffs"),[1] bring this action against defendant, the National Labor Relations Board ("NLRB" or "the Board"), challenging the Board's Final Rule entitled "Representation – Case Procedures," 79 Fed. Reg. 74,308 (Dec. 15, 2014) ("Final Rule"). Compl. [Dkt. # 1]; Am. Compl. [Dkt. # 12]. Specifically, they argue that the Final Rule exceeds the Board's authority under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, in violation of the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et*

---

1   On April 21, 2015, after Baker's motion for a temporary restraining order had been filed and opposed, Baker filed an amended complaint which added three of its employees as plaintiffs. Am. Compl. [Dkt. # 12] ¶ 10. Relying on the amended complaint, Baker's reply in support of its motion asserts new arguments on the employee plaintiffs' behalf regarding the irreparable harm they claim they will suffer if the Final Rule is implemented. Pls.' Reply to Def.'s Opp. to Mot. for TRO with Regard to Irreparable Harm [Dkt. # 11] ("Pls.' Reply") at 4–5. "As a general matter, it is improper for a party to raise new arguments in a reply brief because it deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments." *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010), citing *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008). While a plaintiff may not cure a failure to meet its burden to establish irreparable harm in this manner, the Court will consider the employee plaintiffs' contentions in its irreparable harm analysis.

Exhibit C

*seq.*, and that the new requirements violate Baker's First Amendment right to refrain from speaking and its Fifth Amendment due process rights to privacy and to a full and fair elections process. Compl.; Am. Compl.  On April 17, 2015, Baker moved for a temporary restraining order seeking to stay the enforcement of the Final Rule.[2]  Mot. for Temporary Restraining Order [Dkt. # 3] ("Pl.'s Mot."); Mem. in Supp. of Pl.'s Mot. [Dkt. # 3-1] ("Pl.'s Mem.").  Because the Court finds that Baker has failed to show that it or its employees will suffer irreparable harm if subjected to the Final Rule's requirements, the Court denies the motion for a temporary restraining order.

## BACKGROUND

On December 15, 2014, the Board published the Final Rule in the Federal Register.  79 Fed. Reg. 74,308 (Dec. 15, 2014).  The Final Rule implements twenty-five discrete changes to the procedures governing the election of union representatives for the purposes of collective bargaining.  *Id.* 74,308–10.  As announced in December, it went into effect on April 14, 2015.  *Id.* at 74,308.

---

[2]  Baker is not entirely clear about whether it is seeking a temporary restraining order to prevent implementation of the Final Rule nationwide or just as it relates to Baker itself.  Baker's motion states that "[i]n particular, Baker seeks a temporary stay of enforcement of the new Rule in connection with the petition filed by the United Construction Workers Local Union No. 202-Metropolitan Regional Council of Carpenters ('the Union') on April 15, 2014 [sic]," which seeks to represent Bakers' employees.  Mot. for Temporary Restraining Order [Dkt. # 3] ("Pl.'s Mot.") at 1; *see also* Mem. in Supp. of Pl.'s Mot. [Dkt. # 3-1] ("Pl.'s Mem.") at 2 ("Baker seeks a stay of any enforcement by the Board of the provisions of the new Rule in connection with the petition that has been filed against [it].").  However, the text of the proposed order attached to Baker's motion calls for a blanket stay of the implementation of the Final Rule.  Proposed Temporary Restraining Order [Dkt. # 3-4] ("The Defendant NLRB is hereby ordered to temporarily stay enforcement of the challenged provisions of its new Rule.").  Because Baker's motion only posits irreparable harm to itself and its employees, and not to any potential class of employer plaintiffs, the Court will treat the motion as seeking a stay of enforcement of the Final Rule only as it applies to Baker and the pending Union petition.  *See, e.g.*, *State of Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) ("'[A]n injunction must be narrowly tailored to remedy the specific harm shown.'"), quoting *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976).

Exhibit C

On April 15, 2015, the United Construction Workers Local Union No. 202-Metropolitan Regional Council of Carpenters ("the Union") filed a petition with the Board seeking to represent Baker's employees working as carpenters and laborers at construction sites in the District of Columbia area. Pl.'s Mem. at 1–2. The Board "has indicated to Baker its intent to process the petition," and any related pre-election and election procedures, under the provisions of the Final Rule. *Id.* at 2.

On April 17, 2015, Baker filed a complaint accompanied by a motion for a temporary restraining order, alleging that the Final Rule violates the NLRA, the APA, and Baker's constitutional rights. Compl. ¶ 5. Specifically, Baker asserts that the Final Rule makes improper, "dramatic changes to the representation election process" because it:

- Requires employers to post a notice of election constituting compelled speech prior to any determination by the Board that the petition has sufficient merit to require an election to be held;

- Requires employers to file a burdensome written Statement of Position prior to any hearing being held, upon penalty of precluding employers from presenting evidence at the hearing on any issue not addressed in the Statement, contrary to the rights given to employers to present such evidence in Section 9 of the Act;

- Requires employers to disclose to a petitioning union confidential information about employees inside and outside the petitioned-for unit prior to any hearing being held, upon the same unlawful penalty;

- Postpones evidence taking and litigation over critical issues of voter eligibility until *after* an election takes place;

- Requires employers to turn over employees' highly personal and private information such as personal phone numbers and e-mail addresses to labor organizations within two business days after a decision and direction of election is issued;[]

- Sharply limits the opportunity for employers to seek pre-election Board review, and a stay of the election, by eliminating a 25-day automatic waiting period for such review; and

- Eliminates employers' automatic right to post-election Board review (post-election review would now be discretionary).

*Id.* ¶ 4. The motion for the temporary restraining order claims that Baker will be irreparably harmed by each of these requirements, Pl.'s Mem. at 2–3, but it only discusses two of them – the notice posting requirement and the disclosure of employee information – in detail when identifying the irreparable harm that supports injunctive relief. *Id.* at 11–12.

The Court held a telephone conference between the parties on the record on April 17, 2015, during which it gave the Board the opportunity to brief the issue of irreparable harm by April 20, 2015, and it granted Baker's request to respond by April 21, 2015. *See* Minute Entry (Apr. 17, 2015); Def.'s Opp. to Pl.'s Mot. as to Irreparable Harm [Dkt. # 8] ("Def.'s Opp."); Pls.' Reply to Def.'s Opp. to Mot. for TRO with Regard to Irreparable Harm [Dkt. # 11] ("Pls.' Reply"). On April 21, 2015, along with its reply, Baker filed an amended complaint that added three of its employees as plaintiffs. Am. Compl. ¶ 10.

## ANALYSIS

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011), citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Munaf v. Geren*, 553 U.S. 674, 690–91 (2008). When considering a motion for a temporary restraining order, the Court must consider whether the movant has met its burden of demonstrating that "(1) it has a substantial likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest would be furthered by the injunction." *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989). "The court considers the same

Exhibit C

factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction." *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001).

The D.C. Circuit "has set a high standard for irreparable injury" – it "'must be both certain and great; [and] it must be actual and not theoretical.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006), quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). A movant's failure to make a showing of irreparable injury is grounds for refusing to grant emergency relief, even if the other factors are met. *See id.* ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

For that reason, the Court begins and ends with the irreparable harm analysis. Because plaintiffs have failed to demonstrate that any of the alleged injuries they have identified would be irreparable, or that these injuries are of the "certain and great" nature that would warrant enjoining the application of the Final Rule, the motion for a temporary restraining order will be denied.

**I.     Baker has failed to demonstrate that the Final Rule's requirement that it post an election notice irreparably injures its First Amendment rights.**

Baker claims that the requirement in the Final Rule that it post a notice of election within two days after receipt of the Union's petition from the Board constitutes "[c]ompelled infringement of [its] free speech rights." Pl.'s Mem. at 2. But while plaintiff offers pages of argument on why this notice posting rule is contrary to the First Amendment and the NLRA, it devotes only one sentence in its motion to the irreparable harm it will suffer as a result of this requirement: that "courts have held that infringements of freedom of speech 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" Pl.'s Mem. at 12, quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Baker reiterates this argument in its reply. Pls.' Reply at 2–3, quoting *Elrod*, 427 U.S. at 373.

5

Exhibit C

The Court does not take issue with this general proposition, but Baker's bare assertion of a First Amendment violation, without more, is insufficient to make out irreparable harm. *See, e.g., Chaplaincy of Full Gospel Churches*, 454 F.3d at 301 ("[T]his court has construed *Elrod* to require movants to do more than merely allege a violation of freedom of expression in order to satisfy the irreparable injury prong of the preliminary injunction frame-work. Rather, moving parties must also establish they are or will be engaging in constitutionally protected behavior to demonstrate that the allegedly impermissible government action would chill allowable individual conduct."). Baker's argument on this point presupposes that it is correct on the merits of its First Amendment challenge to the Final Rule. Accordingly, the determination of whether Baker has met its burden to show irreparable harm requires some consideration of whether it has demonstrated a likelihood of success on the merits of its First Amendment claim.

Baker asserts that the notice posting requirement "violates the D.C. Circuit's holding in *National Association of Manufacturers v. NLRB*, 717 F.3d 947, 955 (D.C. Cir. 2013)."[3] Compl. ¶ 24; *see also* Pl.'s Mem. at 6 ("The Board's mandatory notice implicates [plaintiff's] free speech rights just as surely as a law requiring it to post notices of political campaign meetings."), citing *Nat'l Ass'n of Mfrs.*, 717 F.3d at 959 n.19. But that case is distinguishable, and it does not stand for the proposition that requirement to post an election notice necessarily constitutes a violation of an employer's free speech rights.

In that case, the D.C. Circuit addressed a challenge to a provision of an NLRB final rule that required all employers to put all of their employees on notice of their rights under the NLRA by displaying a poster designed by the NLRB at all times. *Nat'l Ass'n of Mfrs.*, 717 F.3d at 950.

---

3   That decision was overruled in part on grounds not relevant to the instant motion. *Am. Meat Inst. v. U.S. Dep't of Agric.,* 760 F.3d 18, 22–23 (D.C. Cir. 2014) (en banc).

Exhibit C

The rule contained three enforcement mechanisms for failure to comply: it declared that an employer's failure to post the notice would constitute an unfair labor practice; any failure to post would permit the Board to "suspend the running of the six-month limitations period for filing any unfair-labor-practice charge;" and the rule authorized the Board to consider an employer's failure to post the notice "as evidence of unlawful motive in a case in which motive is an issue." *Id.* at 950–51.

At the District Court level, this Court determined that the Board had the authority to promulgate the notice posting rule, which it found did not offend the First Amendment, but it held that two of the three enforcement mechanisms – the unfair labor practice determination and the tolling provision – contravened the NLRA and were therefore invalid. *Id.* at 951–52, citing *Nat'l Ass'n of Mfrs. v. NLRB*, 846 F. Supp. 2d 34, 55–68 (D.D.C. 2012). Upon review, the D.C. Circuit agreed that the rule violated section 8(c) of the NLRA because it automatically deemed the employer's failure to post the notice to be an unfair labor practice. *Id.* at 954–60. It also found that the provision enabling the Board to consider the failure to post as evidence violated section 8(c). *Id.* And the Court concluded, as did the District Court, that the tolling provision was invalid because it was "contrary to § 10(b)" of the NLRA. *Id.* at 960–63.

The Court of Appeals discussed the First Amendment implications of the requirement to post the notice. *Id.* at 956–59. But because it found that the notice posting rule was not severable from the enforcement mechanisms it found to be invalid, it vacated the entire rule without ruling on the question of whether the Board had the regulatory or constitutional authority to promulgate the notice portion of the rule alone. *Id.* at 963 ("Because all three of the means for enforcing the Board's posting requirement are invalid, we do not decide whether, as plaintiffs also contend, the

Exhibit C

Board lacked the regulatory authority to issue subpart A of its rule – the requirement that employers post the notice specified in the appendix to that subpart.").

Thus, the D.C. Circuit's opinion in the *National Association of Manufacturers* case does not signal a substantial likelihood of success on the merits for plaintiffs in this case. The notice posting rule was struck down in that case because the Court found that it was inextricably tied to enforcement provisions that the agency had no power to enact, not because it offended the Constitution, and the Court's discussion of the First Amendment questions raised by the challenged rule was premised, at least in part, upon the fact that the requirement to post was coupled with a penalty.

Indeed, the Court of Appeals specifically distinguished its ruling on the general employee rights notice in the *National Association of Manufacturers* case from an existing election notice posting rule that did not include the improper enforcement mechanisms:

> Our conclusion here does not affect the Board's rule requiring employers to post an election notice (which similarly contains information about employee rights) before a representation election, 29 C.F.R. § 103.20. Because the failure to post the required election notice does not constitute an unfair labor practice but may be a basis for setting aside the election, *see id.* § 103.20(d), the rule does not implicate § 8(c) [of the NLRA].

*Id.* at 959 n.19; *see also* 29 C.F.R. § 103.20 (2013) (requiring employer posting of "the Board's official Notice of Election").

The fact that prior iterations of the Board's rules included a "Notice of Election" posting requirement, with the penalty of setting aside the election if an employer failed to comply – and the fact that the D.C. Circuit distinguished that permissible notice from the notice it found to be invalid – further undermine Baker's assertion of irreparable First Amendment injury here. So, the Court finds that Baker's reliance on the D.C. Circuit's decision in *National Association of*

Exhibit C

*Manufacturers* for the proposition that the Final Rule will give rise to an irreparable injury under the First Amendment is misplaced.[4]

In its opposition to the motion for a temporary restraining order, the Board asserts that Baker cannot be said to suffer any irreparable injury because it "faces no fines or other punishment if it fails to comply with what it deems to be objectionable provisions" – "[i]t can simply state its objections and decline to comply with those requirements in order to test their validity." Def.'s Opp. at 7–12. Specifically, the Board states that in representation cases like the one involving Baker and the Union, "any employer which disagrees with the Board's decision to certify a union [after an election] can simply refuse to bargain, forcing the union to file an unfair labor practice

---

4   The Court notes that it was faced with a similar request for emergency injunctive relief in the *National Association of Manufacturers* case, when the plaintiffs moved for an injunction pending their appeal of the Court's decision. Mot. for Inj. Pending Appeal, No. 11-1629 (ABJ) [Dkt # 62]. The Court denied the motion on the grounds that the plaintiffs had failed to demonstrate irreparable injury from the notice posting requirement and that they had not shown a likelihood of success on the merits. Mem. Op. & Order (Mar. 7, 2012), No. 11-1629 (ABJ) [Dkt. # 64]. One month later, the D.C. Circuit granted the plaintiffs' request for an injunction pending appeal, Order (D.C. Cir. Apr. 17, 2012), No. 11-1629 (ABJ) [Dkt. # 66], but the circumstances underlying that decision to maintain "the status quo" are distinguishable from the immediate situation on several important grounds. First, in that case, "the Board postponed operation of the rule during the pendency of the district court proceedings in order to give the district court an opportunity to consider the legal merits before the rule took effect." *Id.* at 1. In other words, the notice posting rule had never gone into effect, and the Board had consented to the delay in its implementation. By contrast, in the instant case, since the Final Rule was published in the Federal Register on December 15, 2014, *see* 79 Fed. Reg. 74,308, the Board has consistently indicated its intent to implement the rule on April 14, 2015 and to move forward with the new regime, and it did not agree to postpone the Final Rule despite the pending litigation in this and other courts. In addition, in granting the stay in the previous case, the D.C. Circuit observed that this Court had "invalidated the primary enforcement mechanisms for violations" of the notice posting requirement, creating "uncertainty about enforcement," which the court found "counsel[ed] further in favor of temporarily preserving the status quo" while the appeal proceeded. Order (D.C. Cir. Apr. 17, 2012), No. 11-1629 (ABJ), at 1. Here, there has been no such finding on the merits of plaintiff's challenge to the Final Rule. While it is true that the pending lawsuits give rise to some uncertainty about enforcement, the status quo in this situation is that the Final Rule has been implemented and elections proceedings are taking place under its new provisions.

Exhibit C

charge, or, in the absence of a charge, permit the employer to ignore the results of the election." *Id.* at 8. The Board explains that if Baker were to fail to comply with the Final Rule, and the Union lost the election and objected, a second election could be held. *Id.* at 9–10. If the Union were to win the rerun election, the Board states that Baker would be able to seek review of the "the validity of the [Final Rule]" by "an appropriate Court of Appeals under section 10(e) or (f)" of the NLRA. *Id.*; *see also* 29 U.S.C. §§ 160(e), (f) (setting forth procedures for review of final order of the Board by "any court of appeals of the United States").

Baker responds that the mechanism the Board uses to enforce its rules is irrelevant – "[r]egardless of whether Plaintiffs are threatened with an unfair labor practice or simply coerced by the threat of a rerun election," it claims that its interests will be irreparably injured by having to comply with the Final Rule. Pls.' Reply at 1–2. And it argues that it has "certainly satisfied any 'chilling effect' requirement" to demonstrate irreparable harm because the Final Rule states that Baker "would have to give up its chance to win the petitioned-for union election before the campaign even begins" if it fails to post the election notice. *Id.* at 3.

But Baker's argument overlooks the fact that the D.C. Circuit specifically distinguished between the penalty of making a failure to post an employee rights notice an unfair labor practice – which it deemed to be impermissibly in conflict with section 8(c) of the NLRA – and the permissible penalty of risking having an election set aside for failure to comply with an election notice posting rule. *Nat'l Ass'n of Mfrs.*, 717 F.3d at 959 n.19. And in any event, at least as it relates to Baker's First Amendment concerns, this point is moot. As Baker acknowledges, it has already posted the notice, Pls.' Reply at 3, thus preserving its ability to challenge the petitioned-for election at a later date. So the Court need not consider the hypothetical question of whether

Exhibit C

the harms that would flow from non-compliance with this provision of the Final Rule are irreparable for the purposes of a temporary restraining order.

Baker also asserts that the election notice causes it irreparable harm because it is "one-sided and incorrect" – it "improperly conditions the right of employees under Section 7 to refrain from any and all activities referenced in the statement of 'rights'" on the notice's first page, and it "editorializes" about the Board's goals of fairness, honesty, and choice in elections. Pl.'s Mem. at 5 & n.2; Pls.' Reply at 2 & n.3. Baker also claims that "[e]ach day that goes by with the notice unwillingly posted on Baker jobsites constitutes a continuing violation of Baker's rights." Pls.' Reply at 4 n.4. But even if Baker's First Amendment objections to the notice are ultimately found to have merit, nothing prevents Baker from engaging in speech of its own in the meantime. As Justice Brandeis put it in *Whitney v. California*, 274 U.S. 357 (1927), "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech." *Id.* at 377 (Brandeis, J., concurring). Baker is free to provide its employees with information that its employees may consider along with the election notice, which expressly informs employees of their rights both to join and not to join a union, and their right to be free of coercion from either side. *See* 29 U.S.C. § 158(c); *see also Nat'l Ass'n of Mfrs.*, 717 F.3d at 955 ("[I]t has been suggested that § 8(c) . . . 'serves a labor law function of allowing employers to present an alternative view and information that a union would not present.'"), quoting *Healthcare Ass'n of N.Y. State v. Pataki*, 471 F.3d 87, 98 (2d Cir. 2006).

Finally the Court notes that a notice tacked onto a bulletin board, or even posted on a website, can be easily removed. Should the Court ultimately invalidate the Final Rule's election notice posting provision, Baker can ameliorate the harm it is suffering simply by taking the notice down. And since the notice notifies employees of their rights under federal law and of the fact

that a petition for election has been filed, any lingering employee awareness of the existence of the election and the relevant procedures cannot be found to constitute irreparable harm to Baker.

For those reasons, the Court finds that Baker has failed to show that its First Amendment rights will be irreparably harmed if the Final Rule is enforced against it.

II.     **Baker has failed to show that the Final Rule's employee information disclosure requirements will cause it or its employees to suffer certain and irreparable harm.**

Baker also asserts that the compelled disclosure of employee information, including employee names, job locations, phone numbers, and email addresses, is an "invasion[] of privacy and compelled public disclosure of confidential information [that] constitutes irreparable [injury] for which there is no adequate remedy." Pl.'s Mem. at 12. "[O]nce the information is disseminated," Baker argues, "the Board cannot put the 'cat' back in the proverbial 'bag,'" thus causing Baker and the employee plaintiffs irreparable harm. *Id.* In their reply, the employee plaintiffs also argue that this requirement will subject them to the "imminent irreparable invasion of their privacy." Pls.' Reply at 4–5; *see also* Decl. of Shannon W. Cotton in Supp. of Pls.' Reply [Dkt. # 11-1] ¶ 3; Decl. of Jorge E. Gonzalez Villareal in Supp. of Pls.' Reply [Dkt. # 11-2] ¶ 3; Decl. of Michael A. Murphy in Supp. of Pls.' Reply [Dkt. # 11-3] ¶ 3.[5]

The Court acknowledges that the individual employees have a valid interest in the privacy of their personal information. But the harms plaintiffs specifically identify as those supporting emergency relief, that is, the risk that the Union "will share employees' private information with its officers, agents, organizers and supporters" and the possibility that the Union cannot "(1)

---

5      During the telephone scheduling conference, the Court asked whether Baker had standing to challenge the Final Rule as an invasion of privacy rights belonging to its employees, and not to Baker itself. Even if the belated addition of Baker's employees as plaintiffs and arguments raised for the first time in reply can properly provide grounds to support the motion to enjoin the implementation of this particular provision, the Court finds that the expanded set of plaintiffs has failed to make out the requisite showing of irreparable injury.

12

Exhibit C

control how these individuals will use the information; (2) cannot control with whom they will share the information; and (3) cannot take the information back if it is misused," Pl.'s Mem. at 12, are entirely speculative. The Final Rule places explicit limits on the purposes for which employee information can be used. *See* 79 Fed. Reg. 74,310 (stating that the list of employee contact information "may only be used for certain purposes"); 79 Fed. Reg. 74,336 (noting that the Final Rule "prohibit[s] nonemployer parties from using the voter list information for purposes other than the representation proceeding, Board proceedings arising from it, and related matters"); 79 Fed. Reg. 74,358 ("[N]onemployer parties would run afoul of the restriction if, for example, they sold the list to telemarketers, gave it to a political campaign or used the list to harass, coerce, or rob employees.").

Plaintiffs do not present any evidence from which the Court could infer that the risk of misuse of this information or unauthorized disclosure by the Union or its agents is even likely, let alone "certain" or "great." This sort of speculative injury cannot form the basis for granting emergency injunctive relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *see also Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 265–66 (finding that movant had failed to show it would suffer irreparable harm if its trade secrets were not immediately ordered returned to it because movant had offered nothing to indicate that the non-movant was "unwilling or unable to protect whatever secrets it still has until this case is decided").

Plaintiffs also appear to claim that the very fact of the disclosure of the employee information to the Union will cause the employee plaintiffs irreparable harm, but the cases they

Exhibit C

rely upon do not stand for the proposition that the disclosure of private contact information automatically constitutes irreparable injury. *See* Pl.'s Mem. at 12, citing *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 501–02 (1994) (holding that bargaining unit employees "have *some* nontrivial privacy interest in nondisclosure" of their home addresses under the Freedom of Information Act and concluding that that interest "substantially outweigh[ed]" the "virtually nonexistent" public interest in disclosure under FOIA and the Privacy Act, not the NLRA); *Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 94 & n.2 (Fla. 1995) (holding that disclosure during discovery of certain kinds of information, including privileged material, trade secrets, attorney work product, or material involving a confidential informant, could constitute a "material injury o[f] an irreparable nature"); *Tribune-Review Publ'g Co. v. Bodack*, 961 A.2d 110, 115–16 (Pa. 2008) (balancing public officials' privacy interest in the nondisclosure of their publicly-funded cell phone records against competing factors that favored public disclosure of those records in a newspaper, and finding that such public disclosure was not warranted).

For those reasons, even if the amended complaint and the new arguments advanced in the reply regarding the irreparable injury suffered by Baker's employees can be properly considered in ruling on the temporary restraining order, the Court does not find that the limited disclosure of the employee information required by the Final Rule constitutes the sort of irreparable injury that would warrant temporary injunctive relief.

**III.     Baker has failed to demonstrate that its due process rights will be irreparably injured by the application of the Final Rule.**

Baker did not specifically address in its motion how it would suffer irreparable harm as a result of any of the other provisions of the Final Rule which it challenges – including the requirement that all issues to be litigated be presented in the pre-hearing Statement of Position, the related limitation on presenting evidence and litigating voter eligibility issues at the pre-election

Exhibit C

hearing, and the shortened election timeframe. *See* Pl.'s Mem. at 11–12. Baker claims generally that the Final Rule results in the "[i]nfringement of [its] free speech rights during the unlawfully abbreviated election campaign," and that "the burdensome requirement of the Statement of Position violates [its] due process rights by not providing it sufficient time to respond to the Union's petition." *Id.* at 3, 7. And in its reply, Baker argues that its rights "are *threatened* with irreparable harm" because, if it fails to make the required disclosures in its Statement of Position under the Final Rule, it will be precluded from presenting evidence on those issues at the pre-election hearing. Pls.' Reply at 5 (emphasis added).

But the Court finds that the threat of such harm is largely speculative, and that any harm Baker would suffer from these provisions is not of the certain, irreparable kind that would warrant injunctive relief. Indeed, the Board has granted Baker's request for a seven-day extension for filing its Statement of Position prior to the pre-election hearing. Def.'s Opp. at 3; *see also* Ex. A to Def.'s Opp. [Dkt. # 8-1] (order rescheduling hearing date). So the harm to this plaintiff arising out of the foreshortened election process has been eliminated or, at least, already mitigated. And if this Court eventually concludes that the new procedures deprived Baker of its due process rights or contravened the NLRA, the election results will be subject to challenge on those grounds. The Court therefore cannot find that Baker's concerns regarding a shortened election cycle and its ability to present all its arguments satisfy its burden to demonstrate that it will suffer irreparable injury absent a restraining order. The Court emphasizes that this portion of the ruling does not address, and it should not be read as any harbinger of, what the Court's ultimate decision on the merits will be.

Exhibit C

## CONCLUSION

The Court concludes by noting that on January 5, 2015, the Chamber of Commerce and a number of other interested parties filed a lawsuit before this Court challenging the Final Rule. Compl. [Dkt. # 1], *Chamber of Commerce v. NLRB*, No. 15-0009 (ABJ). The parties have filed cross-motions for summary judgment in that action, and the motions have been fully briefed. Pls.' Mot. for Summ. J. [Dkt. # 17] ("Pls.' Mot."); Def.'s Partial Mot. to Dismiss & Cross-Mot. for Summ. J. [Dkt. # 22] ("Def.'s Cross-Mot."); Pls.' Mem. in Opp. to Def.'s Cross-Mot. & in Further Supp. of Pls.' Mot. [Dkt. # 25]; Def.'s Reply in Supp. of Def.'s Cross-Mot. [Dkt. # 27]. In the interests of judicial economy and efficiency, the Court will issue a separate order that this case be consolidated with the pending case filed by the Chamber of Commerce plaintiffs. Therefore, the Baker plaintiffs' claims will in effect be expedited in any event.

For the reasons stated above, the Court finds that plaintiffs have failed to demonstrate that they will suffer irreparable injury if the Board's Final Rule is implemented. Accordingly, the motion for a temporary restraining order [Dkt. # 3] is **DENIED**.

**SO ORDERED**.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: April 22, 2015

Exhibit C