IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ASSOCIATED BUILDERS AND | § | |
| CONTRACTORS OF TEXAS, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | 1-15-CV-026  RP |
| | § | |
| NATIONAL LABOR RELATIONS BOARD, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Expedited Summary Judgment, filed February 9, 2015 (Clerk's Dkt. #12); Defendant National Labor Relations Board's Partial Motion to Dismiss and Cross-Motion for Summary Judgment, filed March 9, 2015 (Clerk's Dkt. #24); and the responsive pleadings thereto, as well as the Amicus Brief of the National Right to Work Legal Defense & Education Foundation, Inc., in Support of Plaintiffs, filed February 17, 2015 (Clerk's Dkt. #23). After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

## I.  BACKGROUND

Plaintiffs Associated Builders and Contractors of Texas, Inc. ("ABC of Texas"), the Central Texas Chapter of ABC of Texas ("ABC Central Texas") and the National Federation of Independent Business/Texas ("NFB/Texas") filed this action seeking declaratory and injunctive relief against sole defendant National Labor Relations Board ("Board").  At issue is the Board's recently issued rule, entitled "Representation - Case Procedures; Final Rule," ("New Rule") relating to union representation elections under the National Labor Relations Act ("the Act").

Plaintiff ABC of Texas, and its chapter member ABC Central Texas, act as a trade association representing construction contractors and related employers in Texas.  NFB/Texas is a small business advocacy organization representing small business owners.  Plaintiffs bring this

action on behalf of their members, asserting their members will be harmed and their rights under the Act will be infringed by the New Rule.

The Act contains provisions regulating collective bargaining by unions, and the process by which employees may elect to be represented by a union.  Specifically, a union may represent employees in collective bargaining if the union is "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes."  29 U.S.C. § 159(a).  In each case, "the Board shall decide" the "unit appropriate for the purpose of collective bargaining" in order to "assure to employees the fullest freedom in exercising the rights guaranteed by [the Act]."  *Id*. § 159(b).  When a petition for a representation election is filed, the Board is required to investigate the petition and "provide for an appropriate hearing upon due notice" before the election is held.  *Id*. § 159(c)(1).   The hearing "may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto."  *Id*.  According to Plaintiffs, the regulations in place prior to the New Rule did not limit the topics to be addressed at the hearing, and permitted employers twenty-five days to request review of Regional Director decisions by the Board prior to any tally of ballots in an election.

The New Rule contains twenty-five amendments to the prior regulatory scheme.  79 Fed. Reg. 74,308-10.  Plaintiffs claim the New Rule enacts sweeping changes to the timetable of union representation elections, "in particular by shortening the time allowed for employers to contest the appropriateness of the petition in pre-election hearings, and in some instances disallowing such hearings altogether on such fundamental questions as who is eligible to vote."  (Compl. ¶ 23).  Plaintiffs list ten[1] changes as violative of the Act and the Board's authority.  According to Plaintiffs, the New Rule:

    a. improperly shortens the time between the filing of the union petition and the first day of a hearing

---

[1]  Plaintiffs also state "[d]ue to the length of the [N]ew Rule," the list "is necessarily a non-exclusive list." (Compl. ¶ 25).

b. requires employers to file a written "statement of position," listing the names, work location, shifts, and job classifications of employees in the petitioned-for unit, in any alternative unit contended for by the employer, and of employees the employer contends should be excluded from the petitioned-for unit

c. requires the statement of position to include the basis for any employer contention that the petitioned-for unit is inappropriate, the basis for any employer contention for excluding any individual employees from the petitioned-for unit, and the basis for all other issues the employer intends to raise at the hearing, in a length of time that is inadequate

d. improperly limits the purpose of a pre-election hearing solely "to determine if a question of representation exists," excluding "disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit"

e. limits the evidence parties may introduce in pre-election hearings to evidence that is "relevant to the existence of a question of representation"

f. requires parties to make "offers of proof" at the outset of any hearing, authorizes Regional Directors to bar the parties from introducing the evidence if the offer is deemed to be insufficient to sustain the proponent's position, and bars employers from introducing evidence that is not previously encompassed by the statement of position

g. denies employers the opportunity to present posthearing briefs and to review a hearing transcript prior to stating their post-hearing positions on the record, except upon special permission of the Regional Director and addressing only subjects permitted by the Regional Director

h. requires employers to disclose to unions employees' personal information, including home phone numbers and email addresses, and requires the disclosure in a drastically short amount of time and even as to employees whose eligibility to vote has been contested and not yet determined

i. eliminates the requirement that election ballots be impounded while any request for review of the Regional Director's decision is pending at the Board and eliminates the previous 25-day waiting period for review filings which afforded the Board time to consider such requests for review prior to the vote

j. eliminates the right of employers to obtain mandatory Board review of post-election disputes if they enter into stipulated election agreements prior to the election instead of exercising their right to a pre-election hearing

(*Id*. ¶ 24).

Plaintiffs assert the New Rule should be declared invalid under the Administrative Procedures Act ("APA") because the New Rule: (1) exceeds the Board's statutory authority by

impermissibly restricting employers' ability to prepare for, present evidence relating to, and fairly litigate issues of, unit appropriateness and voter eligibility in petitioned-for bargaining units.; (2) violates the Act by failing to assure to employees the fullest freedom in exercising the rights guaranteed by the Act by compelling the invasion of privacy rights of employees by disclosure of personal information prior to any determination that a union's petition is sufficient to proceed to an election; (3) violates the Act by interfering with protected speech during union election campaigns; and (4) is arbitrary and capricious and an abuse of agency discretion.

Plaintiffs have filed a motion seeking an expedited summary judgment. Defendant, in turn, has filed a motion seeking dismissal of certain of Plaintiffs' claims for lack of jurisidiction on the ground those claims are not yet ripe for review. Defendant has also moved for summary judgment. The parties have filed responsive pleadings and the matters are now ripe for review. The Court will address Defendant's jurisdictional challenge first, then turn to the arguments addressing the merits of Plaintffs' claims.

## II.  RIPENESS

### A.  Applicable Law

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. U.S. CONST. art. III §§ 1-2; *Kokkonen*, 511 U.S. at 377. The party seeking relief bears the burden of establishing subject matter jurisdiction. *United States v. Hays*, 515 U.S. 737, 743 (1995); *Peoples Nat'l Bank v. Office of Comptroller of Currency of United States,* 362 F.3d 333, 336 (5th Cir. 2004).

A party may move for dismissal of a case for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge. *See Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 94-95 (1998) ("The

requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (court must find jurisdiction before determining validity of claim).   On a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

Article III of the United States Constitution provides that federal courts  have the power to decide only actual cases or controversies.  U.S. CONST. art. III, § 2.  The justiciability doctrines of standing, mootness, political question, and ripeness "all originate in Article III's 'case' or 'controversy' language." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  The ripeness doctrine is also drawn "from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

A case is properly dismissed for lack of "ripeness" when the case is "abstract or hypothetical."  *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).  The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'"  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).   "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."  *Choice, Inc.*, 691 F.3d at 714. (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).  However, "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."  *Central & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000).  Notably, the Supreme Court has stated a claim is not ripe if it rests on "contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).  *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) ("[A] ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation.");

## B.  Discussion

The Board maintains Plaintiffs' claims that the New Rule violates the Act by depriving employers of a fair hearing on critical election issues and an adequate opportunity to campaign are not justiciiable as they are not yet ripe.[2]  The Board correctly points out that, in making a facial challenge to the New Rule, Plaintiffs must establish "no set of circumstances exists" under which the challenged regulation would be valid.  *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  The Board thus argues Plaintiffs' challenges are not ripe because the discretion afforded to the Board and its Regional Directors in the New Rule prevents Plaintiffs from asserting those two facial challenges to the New Rule.

The question of ripeness, however, "applies differently to facial and as-applied challenges." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).  Because a facial challenge will succeed only if the statute or regulation could never be applied in a constitutional manner it is a purely legal attack.  A purely legal claim does not require a developed factual record and is thus presumptively ripe for judicial review.  *Harris*, 564 F.3d 1301, 1308 (11th Cir. 2009); *Cement Kiln Recycling Coal. v. E.P.A.*, 493 F.3d 207, 215 (D.C. Cir. 2007); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001).

Moreover, in a supplemental brief, Plaintiffs maintain the New Rule is being implemented in at least 141 petitions filed across the country.  Specifically, Plaintiffs provide the declaration of counsel for Baker DC, whose parent company is a member of Associated Builders and

---

[2]  The Board does not contend Plaintiffs' claims that the New Rule violates the privacy interests of employees and that the New Rule is arbitrary and capricious are not ripe for review.

Contractors.  Counsel states Baker DC was required to file a written Statement of Position under the New Rule's provisions governing the pre-election hearing, a process which he states was extremely burdensome and time consuming.  Counsel further states Baker DC challenged the inclusion of "working foreman" in the petitioned-for unit, but was prevented from presenting evidence at the pre-election hearing under the New Rule.  (Plf. Supp.  Brf. Att. 1 ¶¶ 2-6).  Based on applicable case law and the current circumstances relating to implementation of the New Rule, the Court finds the Board has not shown Plaintiffs' challenges lack ripeness.

### III.  ADMINISTRATIVE PROCEDURES ACT

As set forth above, Plaintiffs challenge the New Rule on four grounds.  By way of the first three, Plaintiffs assert the New Rule exceeds the authority granted under the Act, or otherwise violates its specific mandates. The APA directs a court to "hold unlawful and set aside agency action, findings, and conclusions" which are found to be either "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).  In Plaintiffs' final challenge they argue the New Rule is arbitrary and capricious, thus it runs afoul of the APA's admonition that a reviewing court "hold unlawful and set aside agency action, findings, and conclusions" which it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### A.  Threshold Election Issues

Plaintiffs first contend the New Rule impermissibly restricts employers' ability to litigate threshold issues in a union election.  Specifically, Plaintiffs complain the New Rule does not permit adequate time or appropriate timing for litigation of the issues of unit appropriateness and voter eligibility.  Plaintiffs contend this limitation relies on the false premise that Congress intended the sole purpose of pre-election hearings to be the determination of whether a petitioned-for unit is appropriate for bargaining, excluding voter eligibility issues from consideration.

In pertinent part, the New Rule requires employers to submit a written "Statement of

Position" identifying any basis for contending the proposed bargaining unit is not appropriate, any challenges to voter eligibility and "all other issues the employer intends to raise at the hearing."  29 C.F.R. § 102.63(b) (listing items to be included in Statement of Position).  Plaintiffs complain this new requirement is unprecedented and is particularly burdensome on small businesses who lack access to labor attorneys on short notice and are largely unaware of the legal bases for challenging the appropriateness of a bargaining unit or voter eligibility.

The New Rule does provide parties the right to appear at a pre-election hearing and "call, examine, and cross-examine witnesses, and to introduce into the record evidence of the significant facts that support the party's contentions and are relevant to the existence of a question of representation."  79 Fed. Reg. 74,384; 29 C.F.R. 102.66(a).  However, under the New Rule, a party is "precluded from raising any issue, presenting any evidence relating to any issue, cross-examining any witness concerning any issue, and presenting argument concerning any issue that the party failed to raise" in its Statement of Position.  29 C.F.R. § 102.66(d).  The New Rule additionally requires parties to make "offers of proof" at the outset of any hearing, and authorizes Regional Directors to bar the parties from entering evidence into the record if such offers of proof are deemed to be insufficient to sustain the proponent's position.  *Id*. § 102.66(c).

Prior versions of the regulations did not specifically limit the evidence which could be introduced, but permitted the parties "to introduce into the record documentary and other evidence." 29 C.F.R. § 102.66(a) (replaced effective April 14, 2015).  In adopting the New Rule, the Board stated this amendment "makes clear that, while the regional director must determine that a proposed unit is appropriate in order to find that a question of representation exists, the regional director can defer litigation of individual eligibility and inclusion issues that need not be decided before the election."  79 Fed. Reg. 74,384.  *See also* 29 C.F.R. § 102.64("[d]isputes concerning individuals' eligibility to vote or inclusion in an appropriate unit ordinarily need not be litigated or resolved before an election is conducted.").

8

Finally, the New Rule alters the process for seeking review of a decision of a Regional Director following the pre-election hearing.  Under prior versions of the regulations, parties had the right to seek review of such decisions.  Any action was not stayed by a request for, or grant of, review.  However, the regulation provided that the "Director will normally not schedule an election until a date between the 25th and 30th days after the date of the decision, to permit the Board to rule on any request for review which may be filed."  29 C.F.R. § 101.21(d) (effective until April 13, 2015).  The New Rule eliminates the 25-day waiting period.  79 Fed. Reg. 74,410.

Plaintiffs maintain the portions of the New Rule discussed above, and others, violate the governing statute.  Specifically, Plaintiffs point to the language in the Act requiring the Board to "provide for an appropriate hearing upon due notice" before the election is held.  29 U.S.C. § 159(c)(1).  Plaintiffs do not suggest this language directly mandates that the hearing address issues of voter eligibility.  Rather, they maintain the legislative history of the Taft-Hartley amendments to the Act in 1947 makes this mandate clear.  Specifically, Plaintiffs cite to Senator Taft's statement that  "It is the function of hearings in representation cases to determine whether an election may properly be held at the time, and if so, to decide questions of unit and eligibility to vote."  Supplementary Analysis of the Labor Bill as Passed, 93 Cong. Reg. 6858, 6860 (June 12, 1947).

The Board, in turn, points to the Supreme Court's discussion of the pertinent portion of the phrase "appropriate hearing upon due notice:"

> The section is short. Its terms are broad and general. Its only requirements concerning the hearing are three. It must be "upon due notice," it must be "appropriate," and it is mandatory "in any such investigation," but may be held in conjunction with a § 10 (unfair practice) proceeding or otherwise.
>
> Obviously great latitude concerning procedural details is contemplated. Requirements of formality and rigidity are altogether lacking. The notice must be "due," the hearing "appropriate." These requirements are related to the character of the proceeding of which the hearing is only a part. That proceeding is not technical. It is an "investigation," essentially informal, not adversary. The investigation is not required to take any particular form or [be] confined to the

hearing.

*Inland Empire Dist. Council, Lumber & Sawmill Workers Union v. Millis*, 325 U.S. 697, 706 (1945). The Board maintains the New Rule falls well within the meaning of the Act's "appropriate hearing" phrase, as explained by the Supreme Court.

Plaintiffs argue the decision in *Inland Empire* provides no basis for reliance by the Board for two reasons.  First, they contend *Inland Empire* is not controlling because the issue before the Supreme Court was not whether employers were entitled to present evidence concerning voter eligibility in a pre-election hearing.  Plaintiffs also point out the decision preceded the Taft-Hartley amendments and Senator Taft's statement by two years.

The Court finds neither argument convincing.  Although the issue in *Inland Empire* was not precisely the challenge raised by Plaintiffs, the Supreme Court was nonetheless faced with determining the meaning of the same phrase at issue in this case.  And, the fact that the phrase at issue is still the same, despite the intervening Taft-Hartley amendments, undercuts any reliance by Plaintiffs on the statements of Senator Taft.  Simply put, Congress had the opportunity to alter the language of the Act to include the meaning urged by Senator Taft, but did not.  Absent any change to the statutory language, this Court must look to the pronouncement of the Supreme Court on the meaning of the Act.

The Court also finds significant the language in the New Rule which grants great deference to the Board and its regional directors in conducting pre-election hearings.  Notably, the Regional Director has the authority to postpone the time for submitting a Statement of Position on a showing of either special or extraordinary circumstances.  29 C.F.R. § 102.63(b)(1).[3]  Amendment of both a Statement of Position and response thereto are permitted "for good cause."  *Id*. §§ 102.63(b)(1) & 102.66(b).  Although the New Rule states a hearing officer "shall not receive evidence concerning

---

[3]  The New Rule permits postponement for up to two days on a showing of special circumstances and for more than two days on a showing of extraordinary circumsntances.  29 C.F.R. § 102.63(b)(1).

any issue as to which parties have not taken adverse positions," it further states it does not limit the Regional Director's discretion to "direct the receipt of evidence concerning any issue" if the Regional Director "determines that record evidence is necessary." 29 C.F.R. § 102.66(b).  Further, although the New Rule precludes litigation of voter eligibility at the pre-election hearing, and limits introduction of evidence, the New Rule also states no party shall "be precluded, on the grounds that a voter's eligibility or inclusion was not contested at the pre-election hearing, from challenging the eligibility of any voter during the election."  29 C.F.R. § 102.66(d).

A review of the above provisions makes clear the New Rule grants significant deference to the Board and the Regional Directors in applying the very provisions Plaintiffs challenge. Plaintiffs suggest the deference is illusory as the standards under which the Regional Directors may exercise that discretion are "extraordinary" and thus effectively unavailable.  However, as discussed above, Plaintiffs are bringing a facial challenge to the New Rule.  As a result, they are required to establish there is "no set of circumstances exists" under which the New Rule would be valid. *Center for Individual Freedom*, 449 F.3d at 662.  Accordingly, even if the New Rule ordinarily limits the timing and scope of the pre-election process, the deference granted a Regional Director to extend and expand those limits renders Plaintiffs' challenge unavailing.

In sum, Plaintiffs have not pointed to any binding authority which establishes the language of 29 U.S.C. § 159 prevents the Board from requiring the filing of a Statement of Position prior to a pre-election hearing, requires the Board to permit employers to introduce evidence concerning voter eligibility in a pre-election hearing, or prevents the Board from delaying consideration of voter eligibility prior to an election.  They have not, therefore, established that the New Rule's exclusion of such evidence is contrary to the Act, and thus in violation of the APA.  Plaintiffs' first challenge thus fails.

## B.  Invasion of Privacy

Plaintiffs also challenge the provisions of the New Rule requiring disclosure of personal

information regarding employees prior to and following direction of an election.  Plaintiffs contend

the provisions violate the Act by impairing employees' rights to abstain from union activity.  Plaintiffs

also maintain disclosure of the personal information is an invasion of privacy in contravention of

other statutory schemes.[4]

As noted above, the Act directs the Board to decide the parameters of "the unit appropriate

for the purposes of collective bargaining" so as to "assure to employees the fullest freedom in

exercising the rights guaranteed by [the Act]" 29 U.S.C. § 159(b).  Employees are also granted the

"right" to "refrain from" engaging in union-related activity.  *Id*. § 157.  The New Rule requires

employers to disclose the names and job duties of employees to a petitioning union prior to any

determination that the petition is supported by a sufficient showing of interest to proceed to an

election in an appropriate bargaining unit.  29 C.F.R. § 102.63(b).[5]  The New Rule also requires

employers, after the direction of an election, to disclose personal information, including personal

phone numbers and email addresses, about all employees who are deemed to be part of an

appropriate bargaining unit, as well as whose status has not yet been determined.  29 C.F.R. §§

102.62(d) & 102.67(l).

As a preliminary matter, the Court notes that, while the disclosure of names and job duties

required under the New Rule is prior to direction of an election, it is after the Regional Director has

found "there is reasonable cause to believe that a question of representation affecting commerce

exists, that the policies of the Act will be effectuated, and that an election will reflect the free choice

---

[4]  Plaintiffs also suggest this disclosure requirement is unduly burdensome, particularly on small businesses. However, as discussed below, the prior regulatory scheme required disclosure of employee's names and home addresses.  Further, the Board noted other federal employment laws already require small entities to maintain employee records.  79 Fed. Reg. 74,464 (citing Fair Labor Standards Act and Immigration Reform Control Act as examples).  The Court thus finds Plaintiffs' assertion of increased burden an insufficient basis to defeat the Board's enactment of the New Rule.

[5]  Plaintiffs mistakenly cite to 29 C.F.R. 102.62(d) as the basis for this argument.  As the Board points out, that provision applies to proceedings after the parties have entered into an election agreement defining the appropriate unit or the Regional Director has directed an election in an appropriate unit following a hearing.  In their reply, Plaintiffs make clear the provision they actually challenge is 29 C.F.R. § 102.63(b).

of employees in an appropriate unit."  29 C.F.R. § 102.63(a)(1).  Thus, Plaintiffs' concern that unions can "game" the system by filing a clearly deficient petition merely to obtain a list of employee names and work shifts is not well founded.

Nor is it clear why Plaintiffs believe disclosure of a list of names and job duties would result in either a violation of the Act or an employee's personal privacy.  Plaintiffs do not explain how this information would interfere with an employee's ability to exercise his or her right to decline to talk to a union representative.  As to privacy, Plaintiffs have not explained how a list of employee names and job duties would afford a union representative an opportunity to invade privacy which is significantly greater than available by waiting for an employee at the exit of a job site.  Plaintiffs' challenge to the New Rule's requirement of disclosure of names and job duties of employees prior to the direction of an election is thus without merit.

Plaintiffs also challenge the disclosure requirements under the New Rule following direction of an election.  As Plaintiffs concede, under prior practice employers were required to transmit a list of eligible voters' names and home addresses to the Regional Director within seven days after direction of an election.  The Regional Director then served the list on the parties.  *Excelsior Underwear, Inc.*, 156 NLRB 1236, 1239-40 (1966).  The Board instituted this practice based on a concern that "employees have the opportunity to cast their ballots for or against representation under circumstances that are free not only from interference, restraint, or coercion violative of the Act, but also from other elements that prevent or impede a free and reasoned choice."  *Id*. at 1240.  The Board concluded providing a list of names and home addresses to all parties permitted both employers and union representatives equivalent opportunites to provide information to employees, finding "an employee who has had an effective opportunity to hear the arguments concerning representation is in a better position to make a more fully informed and reasonable choice."  *Id*.

Plaintiffs suggest this Court should decline to find the Board's decision in *Excelsior* of current value, arguing individual privacy protections have expanded significantly since 1966.  But

Plaintiff points to nothing which suggests the Board's concern for the flow of information to an employee has or should have changed.  Nor has the Plaintiff pointed to any statute which would prohibit disclosure of the information to unions.[6]

Moreover, the Board's prior practice was challenged in federal court as "substantively invalid."  The Supreme Court rejected the challenge, and made clear such disclosure was within the Board's discretion to order, stating:

> We have held in a number of cases that Congress granted the Board a wide discretion to ensure the fair and free choice of bargaining representatives. The disclosure requirement furthers this objective by encouraging an informed employee electorate and by allowing unions the right of access to employees that management already possesses. It is for the Board and not for this Court to weigh against this interest the asserted interest of employees in avoiding the problems that union solicitation may present.

*N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 767 (1969) (internal citations omitted).  Even if this Court was willing to accept Plaintiffs' invitation to disregard the Board's prior decision, it is not so willing to disregard the Supreme Court's conclusion that the Board is well within its authority to order disclosure of employees' names and home addresses.

The New Rule does require broader disclosure of employee contact information. Specifically, the New Rule requires disclosure of employees' contact information "including home addresses, available personal email addresses, and available home and personal cellular ("cell") telephone numbers."  29 C.F.R. §§ 102.62(d) & 102.67(l).[7]  Plaintiffs complain this additional disclosure is invasive and may lead to misuse by union representatives.

As an initial matter, the Court points out Plaintiffs' argument does not truly fall within the

---

[6]  Two of the statutes Plaintiffs invoke, the Privacy Act of 1974 and the Freedom of Information Act, govern disclosure of information kept by federal agencies.  The other two statutes, the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, and the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. 7704(a)(3)(A), restrict the conduct of telemarketers and other non-solicited marketing activity.

[7]  The Court notes the mandate of the New Rule requiring disclousre of information concerning employees after an election is directed is prefaced by exemptions for "agreement of the parties to the contrary specified in the election agreement or extraordinary circumstances specified in the direction of election."  29 C.F.R. §§ 102.62(d) & 102.67(l). This discretion again weighs against Plaintiffs' broad facial challenge.

bounds of a facial challenge.  Plaintiffs do not contest the fact that, as discussed below, the Board weighed the varying concerns in concluding this additional disclosure was warranted.  Plaintiffs fail to point to language in the Act or any other statute, which is violated in all circumstances by the additional disclosure under the New Rule.  As a facial challenge, Plaintiffs' argument is unavailing.

Moreover, the Board is entrusted with the "responsibility to adapt the Act to changing patterns of industrial life."  *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975) (addressing Board's construction of rights of employee to request union representation, holding Board's extension of right to include an interview which employee reasonably fears may result in his discipline was recognition of changing industrial practice and not invalid).  In adopting the additional disclosures, the Board discussed the changing methods of communication and almost universal prevalence of email communications, and provided examples of employers communicating information regarding union elections to employees via email.  79 Fed. Reg. 74,337.  The Board specifically cited Justice Kennedy as observing

> Minds are not changed in streets and parks as they once were. To an increasing degree, the most significant interchanges of ideas and shaping of public consciousness occur in mass and electronic media. The extent of public entitlement to participate in those means of communication may be changed as technologies change

*Denver Area Educ. Telecomms. Consortium, Inc. v. FTC*, 518 U.S. 727, 802–803 (1996) (Kennedy, J., dissenting) (internal citation omitted).

While Plaintiffs do not directly contest the Board's conclusion that communication methods have altered over time, Plaintiffs maintain disclosure of personal information provides increased opportunity for union wrongdoing.  However, the language of the New Rule addresses that concern, stating the "parties shall not use the [voter] list for purposes other than the representation proceeding, Board proceedings arising from it, and related matters."  29 C.F.R. §§ 102.62(d) & 102.67(l).  In adopting this language the Board stated "it believes it goes without saying that nonemployer parties would run afoul of the restriction if, for example, they sold the list to

telemarketers, gave it to a political campaign or used the list to harass, coerce, or rob employees." 79 Fed. Reg. 74,358.  Although the Board declined to adopt a specific remedy scheme for misuse of a voter list, it addressed a number of possible remedies for any such misuse and concluded continuing to leave "the question of remedies to case-by-case adjudication" as the Board did in *Excelsior* was appropriate.  *Id*. at 74,359-60.

Plaintiffs assert the Board erred in its conclusion that "this approach is reasonable, given the nearly 50-year absence of evidence of voter list misuse."  *Id*. at 74,427-28.  According to Plaintiffs, this claim is "incorrect," as "there have been many cases over the years in which employees have complained about union abuse of home visitations" but the "Board has usually ignored such employee complaints."  (Plf. Resp. at 7 n.5).  The only support Plaintiffs cite for this statement is a single decision of the Board addressing a union representative's misstatements during a visit to an employee's home.  While the decision does indeed suggest there have been misuses related to employee personal information, the decision also subtantiates the Board's contention that it has and will continue to address those situations.  *See Goffstown Truck Center, Inc.*, 356 NLRB No. 33 (2010) (upholding employer objection to election based on union's representative's conduct in visit to employee's home).[8]

Plaintiffs additionally express concern that disclosure of additional personal information subjects employees to a risk of identity theft and data breach.  Once again, the Court notes Plaintiffs burden in a facial challenge is to establish "no set of circumstances exists" under which the challenged regulation would be valid.  Exposure to an increased risk of improper conduct simply does not rise to that level.

Nor is the Court fully convinced that disclosure of virtual contact information for an employee is more invasive than the current requirement of disclosure of a physical home address.

---

[8]  Plaintiffs also cite *Pulte Homes, Inc. v. Laborers' Int'l Union of N, Am*, 648 F.3d 295 (6th Cir. 2011) as an example of misuse of employee personal information.  However, while that case involves union misconduct, the misconduct consisted of the union's orchestration of an "onslaught" on an employer's phone and e-mail systems.

Virtual contact can be readily ignored.  And virtual contact information can be and is routinely changed, unlike a physical home address.

To the degree risk of identity theft is a concern, the risk arises because organizations maintain records electornically.  The risk is that such records will be "hacked" by some one outside the organization, not that either a union or employer will wrongfully use the email address and cell phone number, in addition to home address, of an employee.  While release of the information to a union admittedly increases the risk, the Board recognized advances in technology "have created a heightened risk of unauthorized dissemination of personal information."  79 Fed. Reg. 74,342.
The Board, however, found

> These risks are worth taking and as a practical matter, must be taken, if communication about organizational issues is going to take place using tools of communication that are prevalent today. Email and cell phones are ever increasing the modes by which people communicate; this continuing expansion in the use of new electronic media demonstrates that the risks associated with these speedy and convenient tools are part of our daily life.

*Id*.  The Court thus concludes Plaintiffs' challenge to the New Rule on the ground it improperly invades privacy fails.

## C.  Interference with Speech

In their third challenge, Plaintiffs maintain the New Rule violates the Act by interfering with protected speech during union election campaigns.  The Act specifically protects the rights of both employers and employees to express or disseminate "any views, argument, or opinion, . . . whether in written, printed, graphic, or visual form" as long as the "expression contains no threat of reprisal or force or promise of benefit."  29 U.S.C. § 158(c).  Specifically, Plaintiffs agree with the Board's dissenters that, in adopting the New Rule, the Board manifested a "relentless zeal for slashing time from every stage of current pre-election procedure."  79 Fed. Reg. 74,431 & n.538 (listing amendments in New Rule "designed to abbreviate the pre-election period").  Plaintiffs contend the cumulative effect of the changes in the New Rule improperly shortens the overall pre-election time

period to an extreme degree, in violation of the "free speech" provision of the Act.  *See Chamber of Commerce v. Brown*, 554 U.S. 60, 67-68 (2008) (enactment of section 158(c) manifested "congressional intent to encourage free debate on issues dividing labor and management" as well as policy "favoring uninhibited, robust, and wide-open debate in labor disputes").

Once again, the support on which Plaintiffs rely for their interpretation of the Act is its legislative history.  According to Plaintiffs, the legislative history of the 1959 amendments to the Act makes clear:

> Congress was unalterably opposed to "quickie" union elections. House Committee Chairman Barden repeatedly stated as much, declaring: "There is not any such thing as reinstating authority or procedure for a quicky election. Some were disturbed over that and the possibility of that is out."  The Senate Sponsor of the 1959 bill and the Conference Committee chairman, Sen. John D. Kennedy, was even more specific, declaring that a 30-day period before an election was needed as a "safeguard against rushing employees into an election where they are unfamiliar with the issues." Kennedy expressly opposed an amendment to the bill because the amendment failed to provide "at least 30 days in which both parties can present their viewpoints."

(Plf. Mot. at 20-21) (internal citations omitted),

As with Plaintiff's reliance on the legislative history above, the Court finds it unavailing. Plaintiffs point to no provision in the Acr or other statute which mandates a thirty day period for the exchange of information prior to an election.[9]  Absent a lack of clarity in statutory language, a court need not examine the legislative history of a statute.  *See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d F.3d 405, 410 (5th Cir. 2014) (court may look to legislative history only when text of statute is ambiguous).

Moreover, as discussed above, the Board is charged with reacting to change.  In 1959, the technology available for communicating election issues to employees was limited to home visits and first class mail.  Change in technology since 1959 has made information far more readily accessible, and the exchange of information much more rapid.  Thus, the expressed need for a

---

[9] Nor was a 30 day period in place prior to the New Rule.  *See* 79 Fed. Reg. 74,309-10 (noting prior rules "generally" required election to be held "between 25 and 30 days after the direction of an election).

specific time period in 1959 is of little relevance half a century later.[10]   Indeed, the Board itself acknowledged "advances in communications technology have made the dissemination of information not only faster, but also more effective and efficient."  79 Fed. Reg. 74,423.

Under the New Rule, the Regional Director is charged with "set[ting] the election for the earliest date practicable." 79 Fed. Reg. 74,310.  The Regional Director is to take into "other relevant factors," specifically including "the desires of the parties, which may include their opportunity for meaningful speech about the election," *Id*. at 74,323, 74,318.  The Court notes once again, in light of the fact that Plaintiffs raise a facial challenge to the New Rule, this discretion alone renders it virtually impossible for Plaintiffs to show the election period in every set of circumstances violates free speech.

Further, in declining to create precise deadlines for an election, the Board addressed concerns about impairing the free speech rights of employers.  As the Board pointed out, the Supreme Court had found union organizing campaigns rarely catch employers by surprise.  *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 603 (1969) (noting union normally informs employer of organization drive early "in order to subject the employer to the unfair labor practice provisions of the Act.").  The Board thus found many employers begin speaking to employees about union representation well before a representation petition is filed.  79 Fed. Reg. 74,320-21 (citing supporting studies).  The Board also concluded employers often communicated their general views about unionization to employees.  *Id*. at 74,321.

Plaintiffs maintain the Board limited its focus to cases in which employers were aware of union organizing activity, but failed to consider the effect when an employer is not aware of the acitivity.  Again, in light of the facial challenge Plaintiffs bring, this argument is of little value.  Moreover, Plaintiffs fail to fully address the Board's final point in addressing free speech concerns.

---

[10]   The Court finds it somewhat ironic that Plaintiffs both oppose disclosure of cell phone numbers and email addresses, methods of communication which would certainly accelerate the process of providing information, yet complain that the New Rule fails to provide adequate time for dissemination of information.

Namely, the Board pointed out employers had an almost unfettered ability to rapidly disseminate their election position after an election petition is filed.  *Id*. at 74,322-23 (noting employers could, and had, held multiple mandatory work-place meetings post-election petition to address pending election).   The Court thus concludes Plaintiffs' challenge to the New Rule on the basis of impairment of free speech fails as they have not demonstrated the New Rule impermissibly burdens speech.  *See Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (right to free speech "does not leave people at liberty to publicize their views whenever and however and wherever they please.'') (internal quotation omitted).

### D.  Arbitrary and Capricious

Plaintiffs finally challenge the New Rule on the ground that it is arbitrary and capricious. The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" which it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Review is governed by the deferential *Chevron* framework.  *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 717 (5th Cir. 2013) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).  The first step of the *Chevron* review is to ask "whether Congress has directly spoken to the precise question at issue." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 842).  If Congress has done so, "that is the end of the matter" and the court "must give effect to the unambiguously expressed intent of Congress."  *City of Arlington v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013) (quoting *Chevron*, 467 U.S. at 842-43).  But if Congress has not specifically addressed the question, "the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id*. (quoting *Chevron*, 467 U.S. at 843).

While a court's review under the arbitrary and capricious standard is narrow, the agency must nonetheless "examine the relevant data and articulate a satisfactory explanation for its action."  *Ring Precision*, 722 F.3d at 723 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  In reviewing that explanation, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id*.  The court upholds an agency's action "if its reasons and policy choices satisfy minimum standards of rationality." *Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010).  Put another way:

> an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43.  Plaintiffs contend the New Rule fits the standard for arbitrary and capricious on all points.

### 1.  Reliance on Improper Factors

Plaintiffs first maintain the New Rule is based on factors Congress did not intend the Board to consider, including speed in scheduling elections, delaying consideration of voter eligibility issues until after a pre-election hearings, disclosure of private employee information and favoring helping organized labor to organize more effectively.

In short, and for many of the reasons discussed above, the Court disagrees.  As the Board succinctly stated, the New Rule was focused on making the election process more efficient:

> For example, pre-election litigation has at times been disordered, hampered by surprise and frivolous disputes, and side-tracked by testimony about matters that need not be decided at that time. Additionally, the process for Board review of regional director actions has resulted in unnecessary delays. Moreover, some rules have become outdated as a result of changes in communications technology and practice.

79 Fed. Reg. 74,308.  Increasing efficiency and effectiveness are hardly bases for concluding enactment of a rule is arbitrary and capricious.  *See Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1340 (2013) (Scalia, J., concurring in part, dissenting in part) ("Making regulatory programs effective is the purpose of rulemaking").

21

The Board does not disagree that it considered speed in the election process in enacting the New Rule.  However, contrary to Plaintiffs' contention that Congress did not intend the Board to consider speed, courts have found expedition of the election process to be a factor properly considered by the Board.  For example, the Supreme Court has held that "Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order to best serve the public interest" and "decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of [the Act]."  *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964).  The Supreme Court has also noted Congress explained the purpose of a 1959 amendment to the Act as being "designed to expedite final disposition of cases by the Board."  *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 141 (1971) (quoting 105 Cong. Rec. 19770 (1959)).  More specifically, the Eleventh Circuit stated "[w]hen Congress passed the Act in 1935, it was particularly concerned that Board-ordered representations elections be held posthaste."  *Florida Bd. of Bus. Regulation Dep't of Bus. Regulation, Div. of Pari-Mutuel Wagering v. N.L.R.B.*, 686 F.2d 1362, 1369 (11th Cir. 1982) (citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 478 (1964)).  *See also Abbott Ambulance of Illinois v. N.L.R.B.*, 522 F.3d 447, 451 (D.C. Cir. 2008) (noting Board rule promoted efficiency in union elections and Board could reasonably weigh delay and uncertainty in election results in altering rules); *N.L.R.B. v. Cedar Tree Press, Inc.*, 169 F.3d 794, 798 (3d Cir. 1999) (concluding Board's policy choice regarding absentee ballots was supported by cogent and reliable analysis, including considerations of delay in election process).  The Board addressed this argument as well, listing additional legal support for the conclusion that Congress intended speed in election proceedings to be a proper focus for the Board.  79 Fed. Reg. 74,316-17.

Plaintiffs' argument that the Board improperly favored the factors of delaying consideration of voter eligibility issues until after a pre-election hearings, disclosure of private employee information and helping organized labor to organize more effectively is even less well founded.  As discussed above, the New Rule does indeed include provisions delaying consideration of voter

eligibility issues and requiring additional disclosure of employee's personal information.  However, Plaintiffs point to nothing in the record which indicates that the Board intended to favor or consider those as "factors" or goals rather than simply the consequence of achieving other goals.

Similarly, Plaintiffs point to nothing in the record which supports their conclusion that the Board intended to favor organized labor.  In fact, the Board strongly denied this accusation, pointing out "that, by passing and amending the [Act], Congress has already made the policy judgment concerning the value of the collective-bargaining process; the Board is not free to ignore or revisit that judgment."  79 Fed. Reg. 74,326.  The Board further noted:

> Many comments additionally charge that the Board's motives for issuing the rule are improper in that the Board seeks to act as an advocate for unions (rather than as a neutral overseer of the process), to drive up the rates of union representation, and to "stack the deck" against employers in union organizing campaigns. No credible evidence has ever been provided in support of this claim. The reasons for issuing the rule are fully set forth [herein]; favoritism is not among them.

*Id* n.83.

### 2.  Failure to Consider Important Aspect of Problem

Plaintiffs next contend the Board refused to consider important aspects of the alleged problem with the speed of the election process, specifically the delays caused by so-called "blocking charges," unfair labor practice charges filed by unions prior to elections.  Under Board policy, processing of a petition is abated "where a concurrent unfair labor practice charge is filed by a party to the petition and the charge alleges conduct that, if proven, would interfere with employee free choice in an election, were one to be conducted."  79 Fed. Reg. 74,455.

The Court first notes the Fifth Circuit has spoken approvingly of the "blocking charge" rule:

> If the employer has in fact committed unfair labor practices and has thereby succeeded in undermining union sentiment, it would surely controvert the spirit of the Act to allow the employer to profit by his own wrongdoing. In the absence of the 'blocking charge' rule, many of the NLRB's sanctions against employers who are guilty of misconduct would lose all meaning. Nothing would be more pitiful than a bargaining order where there is no longer a union with which to bargain.

*Bishop v. N. L. R. B.*, 502 F.2d 1024, 1029 (5th Cir. 1974).  This statement alone suggests the

Board did not act in an arbitrary and capricious manner in declining to wholly alter or eliminate the rule.

Moreover, the Board did consider the delays caused by blocking charges.  In so doing, the Board pointed out the policy has significant exceptions, thus the filing of an unfair labor practice charge does not automatically cause a petition to be held in abeyance.  79 Fed. Reg. 74,418. Further, the Board commented that "the policy is not intended to be misused by a party as a tactic to delay the resolution of a question concerning representation raised by a petition." *Id*.  The Board reviewed the comments and arguments presented in the rulemaking, but ultimately concluded it would continue to apply the policy

> in circumstances where unfair labor practice charges allege conduct that, if proven, would interfere with employee free choice in an election or would be inherently inconsistent with the petition itself, and no special circumstances are present that would warrant further processing the petition in the face of the charges.

*Id*. at 74,419.

The Board also recognized the potential for abuse, and noted current policy designated blocking charges as "Exceptional" cases, with the highest priority and shortest time goals for disposition.  *Id*.  The New Rule also additionally requires a party requesting that an unfair labor practice charge block the processing of an election petition to "simultaneously file [with the Board], but not serve on any other party, a written offer of proof in support of the charge . . . provid[ing] the names of the witnesses who will testify in support of the charge and a summary of each witness's anticipated testimony."  29 C.F.R. 103.20.  The party must also "promptly make available to the regional director the witnesses identified in its offer of proof."  *Id*.  Finally, the New Rule provides:

> If the regional director determines that the party's offer of proof does not describe evidence that, if proven, would interfere with employee free choice in an election or would be inherently inconsistent with the petition itself, and thus would require that the processing of the petition be held in abeyance absent special circumstances, the regional director shall continue to process the petition and conduct the election where appropriate.

*Id*.  Thus, contrary to Plaintiffs' contention, it is apparent the Board did consider the blocking charge

rule, and its delaying effect, in adopting the New Rule.

Plaintiffs further maintain the Board failed adequately to consider the likelihood that the increased deferral of pre-election issues to post-election challenges, compelled by the New Rule, will increase the overall time required to certify union representatives.  As an intial matter, it is not clear why deferring the timing of litigation will increase its length.  Indeed, the Board dissent suggests only that delay may be caused, by opining, without support, that a delay in creation of an evidentiary record will cause a longer review process.  79 Fed. Reg. 74,436.  However, Plaintiffs' position does not consider deferral may render certain issues moot,and thus result in reduced litigation and eliminate the need for creation of an evidentiary record.  *See* 79 Fed. Reg. 74,408 ("in the Board's experience, many pre-election disputes are either rendered moot by the election results or can be resolved by the parties after the election and without litigation once the strategic considerations related to the impending elections are removed from consideration.").  Further, the Board noted the specter of protracted pre-election litigation under the prior rule could be used to "extract concessions" regarding the election.  79 Fed. Reg. 74,386-87.  In sum, the Court finds these challenges to fall short of establishing the Board acted in an arbitrary and capricious manner by failing to consider an important aspect of a problem it was seeking to address in the New Rule.

### 3.  Counter to Evidence and Implausibility

Finally, Plaintiffs maintain the Board's explanations for the New Rule run counter to the evidence in the Administrative Record and/or are so implausible that they cannot be ascribed to agency expertise.  According to Plaintiffs, the evidence presented in the rulemaking establishes union elections are currently being conducted in a timely manner, the competing interests of unions, employers, and employees are carefully balanced and protected, and unions are not disadvantaged by the rules that are currently in place.

Plaintiffs' argument fails for at least two reasons.  First, an agency does not act in an arbitrary and capricious manner by attempting to improve a regulatory scheme, even if the scheme

is working relatively well, improvement may still be achieved.  Second, a review of the decision of the Board makes clear the New Rule was put into place only after an exhaustive and lengthy process, involving presentation of evidence and testimony by numerous parties.  The Board's opinion carefully reviews the evidence and arguments presented, discusses the reasoning for accepting certain testimony and weighing some evidence over other evidence, and explaining how the final conclusions are factually and legally supported.  An agency's decision is not arbitrary and capricious "if the agency considers the factors and articulates a rational relationship between the facts found and the choice made" and gives "at least minimal consideration to relevant facts contained in the record" as it is not the court's role "to weigh the evidence pro and con."  *Delta Foundation, Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002).  Rather, "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).

Accordingly, the Court finds Plaintiffs have failed to show the New Rule, on its face, is in violation of the Act or the APA.  *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 826-27 (2013) ("A court must uphold the [agency's] judgment as long as it is a permissible construction of the statute, even if it differs from how the court would have interpreted the statute in the absence of an agency regulation.").

## IV.  CONCLUSION

The Court hereby **DENIES** Plaintiffs' Motion for Expedited Summary Judgment (Clerk's Dkt.

#12) and **GRANTS** Defendant National Labor Relations Board's Partial Motion to Dismiss and Cross-Motion for Summary Judgment (Clerk's Dkt. #24).

    **SIGNED** on June 1, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE